890 So.2d 697 (2004)
STATE of Louisiana, Appellee
v.
James Arthur WINN, Appellant.
No. 39,104-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
*698 James E. Beal, Louisiana Appellate Project, for Appellant.
Paul J. Carmouche, District Attorney, Shenequa Grey J. Thomas Butler Assistant District Attorneys, for Appellee.
Before GASKINS, MOORE and LOLLEY, JJ.
GASKINS, J.
The defendant, James Arthur Winn, was found guilty of simple robbery after a bench trial. Following his adjudication as a second felony offender, he was sentenced to serve eight years at hard labor without benefit of probation or suspension of sentence. He now appeals. For the following reasons, we affirm the conviction and sentence.

FACTS
On December 10, 2002, Richard Williams, an assistant manager at Rent-A-Center in Shreveport, left work after the store closed at 7:00 p.m. He stopped by a nearby branch of Hibernia Bank to make the night deposit which included approximately $1,200 in cash. As he was opening the door of his red Ford Escort, a man put the "upper half of his body" in the car and was about six inches from Williams' face. The man was wearing a white mask and demanded money. Williams "had the impression" that the offender was armed. Williams gave the robber the bag and the man fled on foot.
Williams proceeded to chase the man in his car while he called 911. Williams watched as the man pulled off the white mask he was wearing and Williams was able to get a good look at his face from about eight feet away. The man ran down into a drainage ditch and Williams did not pursue him because it was a very large ditch and he had "bad knees." Williams was instructed to meet the police at a nearby gas station.
The police apprehended the defendant, James Arthur Winn, in the drainage ditch within a few minutes of arriving at the scene. He was taken to the gas station where Williams identified him as the man who robbed him. Williams also identified the defendant at trial.
The defendant was arrested and charged with first degree robbery. He waived his right to trial by jury and chose to be tried by a judge alone. At trial, the victim recounted the events regarding this incident outlined above.
*699 William Flores testified at trial that he lives about two blocks from the bank. On the evening of the robbery, Flores was backing out of his driveway with his girlfriend, Donna Mitchell, in the car with him. Flores saw a man "running back from the ditch." The man asked him for a ride. When Flores refused to give the man a ride, the man ran down into the ditch.
Flores further testified that he saw a small red Ford, fitting the description of the victim's car, "come around the curve flying." The man who had asked for a ride was running back and forth trying to get to the other side of the ditch. Later that night, after the defendant was apprehended, Flores identified the defendant as the man who asked for a ride.
Mitchell corroborated Flores' testimony. She added that the victim asked, "Did you see anybody running in the ditch?" She also identified the defendant in court as the man she saw in the ditch.
Shawn Hurd, an officer with the Shreveport Police Department, responded to the robbery call in connection with this incident. When he arrived, several other officers were present. He went to the drainage ditch and could see footprints. The defendant was discovered hiding in the ditch. Officer Hurd handcuffed the defendant when he climbed out of the drainage ditch. He said the defendant was wearing a black leather jacket and blue jeans when apprehended. He also testified that the defendant was taken into custody approximately two blocks from the bank.
Chante Wallace, also a Shreveport police officer, testified regarding this incident. In response to a robbery call, the officer met with Williams at the gas station at approximately 7:48 p.m. Williams said he had been robbed by a black male who was 5'5", weighed about 160 pounds and who possibly had a mustache. The robber was described as wearing a black leather jacket and blue jeans.
Officer Wallace took statements from Williams, Flores, and Mitchell and was present when Flores and Mitchell identified the defendant as the person in the ditch.
Darryl L. Coney, of the Shreveport Police Department, testified that he was the officer who brought the suspect out of the squad car for the witnesses to identify after the defendant was apprehended. Officer Coney's supervisor asked the defendant where the money bag was. The defendant said that he dropped it in the ditch. The money was never recovered.
The defendant's brother-in-law, Bobby Rhines, testified that he heard some of the state's witnesses talking about the defendant during the course of the trial. He claimed that Flores indicated that he did not know which person in the courtroom was the man he saw on the night of this incident. Rhines said he was upset later when Flores positively identified the defendant in court.
The defendant testified on his own behalf, denying that he committed the robbery. He claimed that his car broke down and he was apprehended by several police officers while walking to his mother's house. He stated that he was wearing a yellow shirt and gray slacks, not blue jeans as described by the witnesses for the state.
The trial court found the defendant guilty of simple robbery. The state then filed a multiple offender bill of information against the defendant. He was adjudicated a second felony offender and was sentenced to eight years at hard labor without benefit of probation or suspension of sentence.
The trial court denied two motions for post verdict judgment of acquittal which *700 claimed that the evidence was insufficient upon which to base the conviction. The trial court also denied the defendant's motion to reconsider the sentence. The defendant appealed, claiming that the trial court erred in failing to reinstate his right to a jury trial and in adjudicating him to be a second felony offender without a jury trial and then enhancing his sentence.

WAIVER OF JURY TRIAL
The defendant argues that on May 30, 2003, after he waived his right to a jury trial, the record shows that he "apparently" was having second thoughts about the waiver of that right and the trial court should have allowed him to withdraw the waiver. This argument is without merit.
La. C. Cr. P. art. 780 provides:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.
B. The defendant shall exercise his right to waive trial by jury in accordance with the time limits set forth in Article 521. However, with permission of the court, he may exercise his right to waive trial by jury at any time prior to the commencement of trial.
C. The defendant may withdraw a waiver of trial by jury unless the court finds that withdrawal of the waiver would result in interference with the administration of justice, unnecessary delay, unnecessary inconvenience to witnesses, or prejudice to the state.
The United States Constitution and the Louisiana Constitution expressly guarantee the criminally accused the right to a jury trial. U.S. Const. amend. VI; La. Const. art. I, §§ 16, 17. The right to a jury trial is considered to be of major importance in the panoply of rights secured by the Bill of Rights and by the state constitution's Declaration of Rights. State v. Kahey, 436 So.2d 475 (La.1983).
Because of the importance attached to the right to a jury trial, a trial judge must exercise great care in allowing a criminal defendant to waive the right. For instance, when a defendant elects to enter a plea of guilty and thereby waives his right to a trial by jury and other important constitutional rights, the trial judge must advise the defendant personally of his right to a jury trial, his right to confront his accusers, and of his privilege against self-incrimination, and make inquiry of the defendant as to his understanding of these rights and that by pleading guilty he is waiving them. When a defendant chooses to be tried by a judge, the concerns for the defendant's understanding of and voluntariness of his waiver of the right to a jury trial are still present. In this situation, only a waiver which is "knowingly and intelligently" made is acceptable. La. C. Cr. P. art. 780; State v. Kahey, supra.
La. C. Cr. P. art. 780(C) provides that a defendant may withdraw a waiver of trial by jury. In exercising his discretion to grant or deny reinstatement of a defendant's right to a jury trial, the trial judge should balance the legitimate interests of the prosecution and the court against the defendant's fundamental interest in the safeguard of a trial by jury. State v. Catanese, 385 So.2d 235 (La.1980). Where the request to withdraw the waiver of a jury trial is made sufficiently in advance of trial so as not to interfere with the orderly administration of the business of the court or to result in unnecessary delay or inconvenience to witnesses or to the prejudice of the other party to the *701 action, the court should exercise its discretion to allow the moving party the jury trial he seeks. Certainly, when dealing with a right so fundamental as to be characterized by our constitution as one which should remain inviolate, the court should only deny the privilege thus accorded a defendant charged with crime to a trial by his peers where some adverse consequence will flow from his change of mind. State v. Catanese, supra, and cases cited therein.
The record shows that on May 30, 2003, while disposing of preliminary motions, including a motion for speedy trial, the defendant informed his attorney that he wished to waive his right to a jury trial. The defendant elected to be tried by the judge in a bench trial. The court allowed the defendant time to discuss his decision with his attorney. The following colloquy took place:
THE COURT: All right. Mr. Winn, do you understand that you do have a right to a trial by a jury?
THE DEFENDANT: Yes.
THE COURT: Do you understand that if you waive and give up that right to a trial by jury, then the judge will hear your case? Do you understand that?
THE DEFENDANT: Yes, ma'am.
THE COURT: Do you understand that that judge would  I would be that judge?
THE DEFENDANT: Yes.
THE COURT: All right. Do you understand that if you waive the jury and I am the judge in your case that hears your case, and you are convicted of the charge, I would also be the judge who would sentence you? Do you understand that?
THE DEFENDANT: Yes, ma'am.
THE COURT: All right. And given all of that and the fact that you understand that, do you still wish to waive the jury?
THE DEFENDANT: Yes, ma'am.
THE COURT: And you want me to hear your case?
THE DEFENDANT: Yes, ma'am.
The court then set the trial for July 29, 2003. The court held a bench conference on the motion for speedy trial and then made the following comment:
THE COURT: The Court had visited with counsel for a moment on the motion for speedy trial. And, [defense counsel], I will give you a moment to confer with Mr. Winn. Madam Clerk? Mr. Winn? Let me see if I can help you, [defense counsel]. We will note that the speedy trial motions are pending. We have a bench trial set for July 29th. And, Mr. Winn, just so you will know, I am not going to go back and forth with this waiving the jury, asking for a jury trial. Once you make a decision, then you are going to have to stick with it. Do you understand that?
THE DEFENDANT: Yes, ma'am.
There is no showing in the record that the defendant indicated that he wanted to change his mind and reinstate his right to a jury trial. We note that the defendant never made a request, oral or written, to withdraw his waiver of the right to a trial by jury. Further, the record contains no contemporaneous objection before or during the bench trial. La. C. Cr. P. art. 841 provides in pertinent part:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known *702 to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
The lack of an objection further indicates that the defendant intended to waive his right to a trial by jury.
In the present case, the defendant has failed to show that he sought to reinstate his right to jury trial, that any such request was denied by the trial court, or that he objected to any ruling whatsoever of the trial court on this issue. The record shows a valid waiver of the defendant's right to a jury trial.

BLAKELY VIOLATION
The defendant argues that the trial court deprived him of his Sixth Amendment right to trial by jury and due process when the trial court adjudicated him guilty of prior offenses to be used as sentencing enhancements without the availability of a jury trial on the issue, and then used the adjudication to impose a sentence far in excess of that prescribed by the statute under which he was convicted. He claims that this action was in violation of Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
The defendant was found guilty of simple robbery. The penalty for that offense is set forth in La. R.S. 14:65(B):
B. Whoever commits the crime of simple robbery shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than seven years, or both.
The defendant was then charged as a second felony offender. At the multiple offender hearing, the state established that the defendant had a prior conviction for possession of a Schedule II controlled dangerous substance with intent to distribute. The court found the defendant to be a second felony offender. He was subsequently sentenced in accordance with La. R.S. 15:529.1 which provides in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
....
G. Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
Accordingly, the trial court sentenced the defendant to serve eight years without benefit of probation or suspension of sentence.
The defendant essentially challenges the constitutionality of La. R.S. 15:529.1. This issue was not raised in the trial court and is not properly before this court for review. *703 See Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859. However, even if the issue had been properly raised, it would be without merit.
In Blakely v. Washington, supra, the defendant pled guilty in the state of Washington to kidnapping his estranged wife. Under that state's sentencing guidelines, the court imposed an exceptional sentence almost three years longer than the statutory maximum due to the defendant's deliberate cruelty in the commission of the offense. The defendant argued that this sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. The United States Supreme Court agreed, finding that Washington's sentencing scheme violated the defendant's right to trial by jury.
The holding in Blakely was based upon Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, under New Jersey law, the defendant was convicted of possession of a firearm for an unlawful purpose. A separate statute allowed for an extended term of imprisonment if the trial court found that the purpose of the offense was a hate crime. The defendant raised the issue of whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense be made by a jury on the basis of proof beyond a reasonable doubt. The United States Supreme Court held in Apprendi that, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
In the present case, the defendant contends that our state's multiple offender statute violates his right to have a jury determine beyond a reasonable doubt all facts increasing his penalty for this crime beyond the prescribed statutory maximum. As applied in the present case, under the multiple offender statute of La. R.S. 15:529.1, the trial court used prior convictions to enhance his penalty. Prior convictions are specifically excluded from the rulings in Apprendi and Blakely because, unlike virtually any other consideration used to enlarge the possible penalty for an offense, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees. Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); United States v. Tighe, 266 F.3d 1187 (9th Cir.2001), as cited in State v. Brown, 2003-2788 (La.7/6/04), 879 So.2d 1276, cert. denied, ___ U.S. ___, 125 S.Ct. 158, 160 L.Ed.2d 40 (2004).[1]
In the present case, the defendant's adjudication as a second felony offender and the enhancement of his sentence based upon that finding does not violate his right to a jury trial.

CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, James Arthur Winn.
AFFIRMED.
NOTES
[1] We note that State v. Brown, supra, found that the portion of La. R.S. 15:529.1 allowing juvenile convictions, which are not afforded the right of trial by jury, to be used as prior convictions for purposes of the habitual offender statute, violates the right to trial by jury as specified in Apprendi v. New Jersey, supra. Therefore, that portion of La. R.S. 15:529.1 is unconstitutional. However, that finding has no application in the present case.