962 So.2d 1126 (2007)
STATE of Louisiana, Appellee
v.
David Earl JOHNSON, Appellant.
No. 42,323-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1128 Louisiana Appellate Project, by Sherry Watters, New Orleans, for Appellant.
Paul J. Carmouche, District Attorney, Dhu Thompson, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before BROWN, CARAWAY and MOORE, JJ.
MOORE, J.
The defendant, David Earl Johnson, was convicted as charged of three counts of molestation of a juvenile. He was adjudicated a third felony habitual offender on the first count and sentenced to 30 years on count one and 15 years on counts two and three, imposed consecutively and without benefits. The defendant now appeals. We affirm the defendant's convictions and sentences; however, we delete those portions of the sentences which deny parole.

FACTS
The defendant, a resident of Shreveport born in 1967[1], had a relationship with a woman, MJD, from the late 1980's until about 1996. MJD had two daughters before she met the defendant, LD1, born on May 16, 1983 and JD, born on July 27, 1985. The defendant and MJD had three children together. Two of the children were boys, but there was one daughter, LD2, born on August 14, 1990.
In 1996, the Office of Community Services ("OCS") received a report that the defendant was molesting one or more of these children. LD1 confirmed to an OCS worker, Mardie Fisher Griffin, that Johnson had touched her vaginal area several years prior to 1996, that knowledge of this incident had caused MJD to kick the defendant out of the house, but that MJD had allowed the defendant to return after a month.
In a separate interview by Griffin, the defendant admitted "rub[bing] his hand on LD1's crotch" twice about two and one-half years prior to the interview, and he also admitted that it would be in the children's best interest if he were not to be left unattended with the children.
The matter was not pursued criminally at that time. In 2000, authorities received a report that Johnson had molested a child named LW. LW told police that Johnson had put his finger in her vagina, but police were later unable to locate LW (who moved out of state) or the defendant.
In 2001, authorities received another report that Johnson was molesting one or more of the children. The police report indicates that one of the victims' brothers told police that he had seen Johnson "hunching" his sisters in December 2000. Physical examinations of LD2 and another child, "P", revealed normal results. MJD apparently opted not to pursue the matter further at that time.
In 2002, the children were sent to live with a maternal aunt away from their father and mother. In January 2002, the OCS interviewed the entire family and through interviews confirmed that Johnson had molested JD, LD1 and LD2. LD2 was interviewed at the Gingerbread House, a facility for conducting forensic interviews with child victims; LD1 and JD were interviewed at home. The interviews were conducted in the presence of Shreveport Police Department ("SPD") Corporal Rita Caldwell. Then 11-year-old LD2 said in her interview that Johnson had "put hair grease on her private . . . [and] put his privates in her." JD said that the defendant would touch her breasts and her privates when she was in bed. LD1 said that the defendant would come into the room *1129 where she and JD slept and touch their privates. LD1 also said that when she reached age 10, the defendant commenced having sex with her by "actually putting his private in my private." Physical examinations revealed no signs of child abuse.
Shreveport police interviewed the defendant on February 1, 2002. Corporal Caldwell was one of the interviewers. The defendant initially denied any inappropriate conduct with the children. However, after continued questioning, the defendant admitted:
-Rubbing on then nine-year-old LD1's "booty" and achieving an erection;
-Licking then twelve-year-old LD1's vagina;
-Attempting but failing to put his penis in then thirteen-year-old LD1's vagina, and then masturbating to ejaculation;
-Rubbing on JD's breasts.
The defendant denied any improper contact with LD2, his biological daughter. He admitted to touching another child, LW, between her legs.
On March 25, 2002, the state charged Johnson with four counts of molestation of a juvenile citing LW, LD2, JD and LD1 as the victims. Each charge in the bill of information alleged that the defendant committed the crime while he had control or supervision over the child. The charge pertaining to LW was later dropped and the matter went to jury trial on the charges relating to the other three children.
LD2, 15 years old at the time of trial, lived with the defendant and his wife for a time when she was about 10 years old. LD2 said that when she lived with the defendant and his wife, she had to mind them. She said that when she was around 10 years old, the defendant raped her by "put[ting] his private part inside my private part." She said that the defendant put hair "grease" on her private part and put his private part into hers; LD2 said that this "hurted . . . bad, very." She said this happened more than three times. She said that she was about 11 years old when she made her first report of the incident. She told her brother, who then told her older sister who called the police.
LD1, 22 years old at the time of trial, testified that the defendant started touching her on her vagina and breasts when she was about 7 or 8 years old. She said that this happened about twice a week, and that she did not report this until she was 10 or 11 years old because she was frightened. She said that the touching escalated into sexual intercourse by the time she was 13 years old and that this continued when she was 14 years old. LD1 said that when she lived with the defendant, the defendant was able to punish her. She also testified that she walked into the defendant's room and saw the defendant "on top of" her sister JD when JD was about 7 or 8 years old.
JD, 20 years old at the time of trial, testified that when she was 9 or 10 years old, the defendant put his hand under her gown and felt her breasts. She testified that this occurred until she was about 11 or 12 years old, but that the defendant never touched her anywhere else. JD testified that when she lived with the defendant, she looked to him as her stepfather and that he could tell her what she had to do and punish her when she had done wrong.
Mardie Griffin, the OCS worker, testified that LD1 had told her in 1996 that the defendant had touched her (LD1) vaginal area (through her clothes) twice about two years previously. Ms. Griffin also testified that the defendant told her that he had touched LD1 in her vaginal area on at least two occasions about two years prior to the interview.
*1130 Dr. Jennifer Rodriguez, a pediatrician, testified that she had performed two physical examinations of LD2 when the child was 11 years old. Both examinations revealed no sign of abuse, although the doctor explained that the genital area normally heals very quickly if injured. Dr. Ann Springer, a pediatrician and expert in child abuse matters, also testified that it is normal to have no positive physical findings in child abuse cases because of the rapid healing of the tissues involved.
SPD Corporal Rita Caldwell testified about her 2002 interviews with the children and with the defendant. Defense counsel apparently objected to the admission of the officer's testimony about the girls' statements, although neither the objection itself, nor the grounds therefore, are on the record; the transcript reveals only a sidebar conference. Corporal Caldwell said that LD2 said that the defendant had raped her by getting on top of her and "hunching and moving up and down." The officer testified that JD didn't want to give her a statement because the events had traumatized her but said that JD later described "some things" to her. The officer also testified that she interviewed LD1 who told her that certain incidents began when the child was 6 or 7 years old and progressed to sexual intercourse sometime after the child turned 10 years old. The jury also heard a redacted version of the defendant's 2002 confession.
After the corporal testified, the defendant's objection to her testimony was heard by the court on the record. The defendant's objection was that the corporal's testimony was hearsay; the court noted that it entertained and overruled the objection at the time it was made. The case then went to the six-member jury, who unanimously found the defendant guilty on all three counts.
The state filed an habitual offender bill against Johnson on March 9, 2006, alleging that he was a third felony offender as to count one of the molestation matter (under the revised bill, the victim of count one would be LD2). On May 23, 2006, the matter came on for hearing. Caddo Parish Sheriff's Deputy Owen McDonnell testified on behalf of the state. Through McDonnell's testimony, the state introduced proof that Johnson had been convicted on February 15, 1990, of attempted possession of Schedule I CDS with intent to distribute, and the defendant had also been convicted of attempted possession of Schedule II CDS with intent to distribute on March 18, 1993. The deputy testified that the fingerprints on the previous bills of information matched the defendant's prints, and the court found Johnson to be a third felony offender.
A variety of character witnesses testified on behalf of the defendant and attested that they believed him to be of good character. None of these witnesses were fully aware of the nature of the acts for which the defendant had been convicted. The defendant himself testified; he expressed regret for what he called the attempted molestation of the two older girls, but he denied any inappropriate conduct with his own daughter. He also admitted that he was the person who had been convicted of the two drug offenses that formed the basis of the habitual offender bill.
The court sentenced Johnson to serve 30 years imprisonment at hard labor on count one (enhanced by the multiple offender bill) and 15 years imprisonment at hard labor on counts two and three, with all sentences to be served consecutively and without benefit of parole, probation or suspension of sentence. Johnson filed a motion to reconsider sentence, arguing that his sentences were excessive and should not have been imposed without benefit of parole, probation or suspension of *1131 sentence. The court denied that motion, and Johnson now appeals.

DISCUSSION
Assignment of Error No. 1. The trial court erred in allowing hearsay evidence to impermissibly bolster the alleged victim's testimony and ease the State's burden of proof.
In his first assignment of error, the defendant urges that his rights were violated when the trial court allowed SPD Corporal Rita Caldwell to testify about the substance of the statements made to her by the three child victims. The defendant argues that the officer's testimony was hearsay and not admissible under any exception. Specifically, the defendant argues that the officer's testimony was inadmissible under the first report of child sexual assault provision of La. C.E. art. 804(B)(5), which provides:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(5) Complaint of sexually assaultive behavior. A statement made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior.
(Emphasis added.) In the instant case, each of the three young women was available as a witness, and indeed each of the victims actually testified at the trial. La. C.E. art. 801(D) provides, in part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
The officer's testimony was not hearsay because the declarants actually testified at the trial, were subject to cross-examination, and the evidence was offered to rebut a defense challenge to the implication that the victims' testimony contained exaggerated descriptions of events in order to bolster the state's case. See State v. Mickens, 31,737 (La.App. 2 Cir. 3/31/99), 731 So.2d 463, writ denied, XXXX-XXXX (La.9/24/99), 747 So.2d 1118; State v. Small, 29,137 (La.App. 2 Cir.1997), 693 So.2d 180.
This assignment of error is without merit.

Assignment of Error No. 2. The trial court erred in imposing unconstitutionally excessive sentences on David Earl Jones by exceeding the ten year maximum and adding the "without benefit of parole, probation or suspension" restrictions, though the jury had not been instructed on, or made, the finding of the additional facts necessary for that restriction.
The crime of molestation of a juvenile is set forth in La. R.S. 14:81.2[2], in part, as:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying *1132 the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
B. Whoever commits the crime of molestation of a juvenile shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not less than one nor more than ten years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
C. Whoever commits the crime of molestation of a juvenile when the offender has control or supervision over the juvenile shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not less than one nor more than fifteen years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893.
The maximum punishment for the offense may thus be more severe when the state proves that the offender has control or supervision over the juvenile. The judge sentenced the defendant under Section C of the statute. In his motion to reconsider sentence, Johnson did not complain about being sentenced under Section C instead of Section B; indeed, he indicated that the penalty range was that provided in Section C. However, on appeal, he argues that there is no evidence that the jury found the "control or supervision" element, so the court was only empowered to sentence him under Section B.
In the instant case, the bill of information charged Johnson by reciting part of the definition of molestation of a juvenile given in La. R.S. 14:81.2, including the description: "by the use of force, duress, menace, psychological intimidation, and by the use of influence by virtue of a position of control and supervision over said juvenile." (Emphasis added.) The statutory definition uses the word "or" in place of the word "and" that is used in the bill of information. Thus, the defendant had notice that he was being charged with the more serious offense under Section C.
However, the charge to the jury included this definition of the offense:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
This is the exact definition provided in La. R.S. 14:81.2(A) and uses the word "or" before the "control or supervision" element. Sentencing for this base offense is provided in La. R.S. 14:81.2(B). The recitation of the charges in the jury charge did not mention the control or supervision element.
At trial, the state introduced the testimony of each of the victims asserting that Johnson acted with parent-like authority over the victims during the time the victims lived with the defendant and during the time of these offenses. Our review *1133 under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), shows that the evidence introduced by the state was sufficient to prove beyond a reasonable doubt that the children were under Johnson's supervision or control at the time he molested them. However, the jury charge did not specifically ask the jury to find whether Johnson had control or supervision over the children at the time of the crimes.
The defendant did not object to the jury charge. The jury verdict forms gave the jury options for molestation of a juvenile, attempted molestation of a juvenile, indecent behavior with a juvenile, attempted indecent behavior with a juvenile, or not guilty. There was no specific option for molestation of a juvenile while the juvenile was under the offender's control or supervision. The jury found the defendant to be "guilty as charged" of molestation on all counts.
Even though Johnson did not challenge the imposition of the Section C penalty in his motion to reconsider sentence, La. C. Cr. P. art. 881.2 provides, in part:
A. (1) The defendant may appeal or seek review of a sentence based on any ground asserted in a motion to reconsider sentence. The defendant also may seek review of a sentence which exceeds the maximum sentence authorized by the statute under which the defendant was convicted and any applicable statutory enhancement provisions.
The defendant argues that the jury did not find him guilty of the more serious "control or supervision" offense, and therefore contends that his sentence exceeds the maximum authorized by the statute of conviction and also the applicable enhancement provision (here, only La. R.S. 15:529.1). Thus he contends he is entitled to raise this issue on appeal. See also La. C. Cr. P. art. 882, which allows correction of an illegal sentence at any time.
After review of the trial record, we conclude that the jury did in fact convict the defendant of the more serious "control and supervision" offense. The facts in this case distinguish the holdings under Shepard v. U.S., 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely, supra. Shepard held that any external materials or issues that do not appear on the face of certified court documents or were not admitted, must be decided by a jury or proven beyond a reasonable doubt if they are relied on to increase a sentence.
The jury verdict form in this case generically refers to the basic crime of molestation of a juvenile and does not include as an additional element of the offense committed with supervision or control.
Although the jury verdict form does not expressly show a jury finding convicting defendant of the more serious offense committed with supervision or control, the bill of information clearly charged the defendant with the more serious grade of the offense. This fact distinguishes Apprendi, supra, where the second degree possession of a firearm charge did not refer to the state's "hate-crime" statute which the court used to enhance the defendant's sentence. Rather, in this instance, the penalty-enhanced charge was read to the jury before the opening statement, the ADA *1134 mentioned this factor as an element in his opening statement and in his closing statement, and the jury verdict also states that the defendant was "guilty as charged. . . ." Cf. Blakely, supra. Our review of the trial testimony discloses that the evidence submitted to the jury is clearly sufficient to convict defendant of the more serious grade of the offense charged. Cf. Shepard, supra.
On the other hand, La. R.S. 14:81.2(C) does not permit the imposition of a sentence without benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1(G) requires that an habitual offender sentence be imposed without benefit of probation or suspension of sentence, but does not mention a disability against parole, and here, La. R.S. 14:81.2(C) does not impose a parole disability. Thus this assignment of error has merit.
Accordingly we delete that part of Johnson's 30-year sentence that imposes a sentence without benefit of parole, and we delete from the other two 15-year sentences those parts of the sentences that impose sentences without benefit of parole, probation or suspension of sentence.[3]

Assignment of Error No. 3. The trial court erred in finding David Earl Johnson to be a third offender on evidence that did not meet the burden of proof under R.S. 15:529.1 for proving less than a ten year time lapse and for proving adequate Boykinization during the prior pleas; further, the enhancement of his sentence without a jury trial on the multiple bill allegations, violated his Constitutional rights.
The defendant argues that his habitual offender adjudication was invalid because the state failed to prove (1) that his prior convictions were sufficiently close in time to his latest conviction and (2) that his guilty pleas for the prior offenses were constitutionally valid.
La. R.S. 15:529.1(C) provides:
C. The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.
As noted above, Johnson was convicted (by guilty plea) on February 15, 1990, of attempted possession of Schedule I CDS with intent to distribute. The court sentenced Johnson to serve 2½ years imprisonment, suspended in favor of supervised probation. On September 26, 1991, the defendant's probation was revoked. The defendant was also convicted (by guilty plea) of attempted possession of Schedule II CDS with intent to distribute on March 18, 1993. The court sentenced Johnson to serve one-year imprisonment at hard labor for this offense.
*1135 In State v. Everett, 2000-2998 (La.5/14/02), 816 So.2d 1272, the supreme court stated:
Subsection (C) [of La. R.S. 15:529.1], however, provides that "[t]his Section," i.e., the Habitual Offender Law, "shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions . . . and the time of the commission of the last felony for which he has been convicted." We interpret this subsection to mean that in order to determine whether the Habitual Offender Law applies at all to enhance a defendant's sentence after conviction of a subsequent felony, we must look to that time period between defendant's discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony. If that time period encompasses more than ten years, then the Habitual Offender Law is inapplicable to defendant's case and he cannot be sentenced as anything other than a first offender. If, on the other hand, ten years or less have elapsed between the defendant's discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony, then the Habitual Offender Law is applicable and subsection (A) is employed to determine the appropriate sentence. Under subsection (A), defendant's felony convictions are simply counted, either second, third, or fourth or subsequent, and the applicable penalty is imposed. As defendant himself correctly recognizes, subsection (C) is concerned only with that period of time between the expiration of the sentence for the last previous felony conviction and the commission of the last felony. It is only that time period which the legislature has made relevant to determine whether defendant will be sentenced under the Habitual Offender Law.
Footnote omitted.
LD2 testified that the defendant's sexual misconduct with her commenced when she was about 10 years old. LD2 was born in 1990, so the misconduct would have occurred in 2000 or 2001, long before the expiration of the ten-year "cleansing" period for Johnson's release from custody for his 1993 conviction. Under the interpretation of the statute announced in Everett, the defendant was properly adjudicated a third felony offender.
In addition, the defendant urges that his prior guilty pleas were constitutionally infirm. Although the defendant filed a motion to quash the multiple offender bill, he did not raise that claim in his motion to quash; the motion to quash urged only that the state had to prove the defendant's habitual offender status to a jury. La. R.S. 15:529.1(D)(1)(b) provides:
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous *1136 conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
The defendant did not raise this challenge to his prior convictions in his response to the bill or prior to the imposition of sentence, so he may not now complain of any errors in those convictions. Further, such a complaint would be without merit. The plea colloquies introduced by the state show that, prior to accepting the defendant's pleas, the court informed the defendant of his rights per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and that the defendant indicated that he understood his rights in both cases.
The defendant also re-urges his claim that his habitual offender adjudication is in violation of his right to a jury trial, citing Apprendi, supra, and Blakely, supra. This court has previously rejected this argument. See State v. Winn, 39,104 (La.App. 2 Cir. 12/15/04), 890 So.2d 697, writ denied, XXXX-XXXX (La.5/13/05), 902 So.2d 1018:
Prior convictions are specifically excluded from the rulings in Apprendi and Blakely because, unlike virtually any other consideration used to enlarge the possible penalty for an offense, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.
This assignment of error is without merit.
Assignment of Error No. 4. The trial court erred in imposing unconstitutionally excessive sentences on David Earl Johnson, particularly by ordering that the sentences be served consecutively.
A trial judge has wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App. 2 Cir. 1/26/05), 892 So.2d 710. He or she is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single cause of conduct are not mandatory, and it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Boudreaux, 41,660 (La.App. 2 Cir. 12/13/06), 945 So.2d 898; State v. Robinson, 33,921 (La.App. 2 Cir. 11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App. 2 Cir. 04/05/00), 756 So.2d 1218, writ denied, 00-1572 (La.03/23/01), 787 So.2d 1010.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Boudreaux, supra; State v. Mitchell, 37,916 (La.App. 2 Cir. 03/03/04), 869 So.2d 276, writ denied, 04-0797 (La.09/24/04), 882 So.2d 1168, cert. denied, 543 U.S. 1068, 125 S.Ct. 905, 160 *1137 L.Ed.2d 801 (2005); State v. Maxie, 30,877 (La.App. 2 Cir. 08/19/98), 719 So.2d 104. Among the factors to be considered are the defendant's criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2 Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2 Cir. 1986), writ denied, 496 So.2d 355 (La. 1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4 Cir. 1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1 Cir. 1983), writ denied, 435 So.2d 433 (La. 1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); the potential for defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La.App. 2 Cir.1987); and whether defendant has received a benefit from a plea bargain, State v. Jett, supra; State v. Adams, supra. See also State v. Maxie, supra. Failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Boudreaux, supra; State v. Hampton, 38,017 (La.App. 2 Cir. 01/28/04), 865 So.2d 284, writ denied, State ex rel. Hampton v. State, 04-0834 (La.03/11/05), 896 So.2d 57, writ denied, State ex rel. Hargrove v. State, 04-2380 (La.06/03/05), 903 So.2d 452.
The record indicates that Johnson knew he had a problem, yet he continued to molest these children on numerous occasions over a span of years and the abuse started when the children were very young. The consecutive sentences imposed are justified by the record in this case, and accordingly, we find no abuse of the trial court's discretion in imposing these consecutive sentences.

CONCLUSION
For the foregoing reasons, the convictions and sentences are affirmed. That part of the defendant's 30-year sentence that imposes the sentence without benefit of parole is deleted; the parts of defendant's two 15-year sentences that impose 15-year sentences without benefit of parole, probation or suspension of sentence are deleted. In all other respects the 30-year and 15-year consecutive sentences are affirmed.
AFFIRMED.
NOTES
[1] The defendant has a number of aliases and has given various birth dates, but he was clearly over the age of 17 when these events occurred.
[2] Notably, this law was amended in 2006 by Act 36 of 2006 to increase the minimum sentence in section C from 15 to 20 years imprisonment. In addition, Act 103 of 2006 amended the statute to include a new paragraph E providing for a minimum hard labor sentence of 25 years imprisonment when the state proves that the victim was under age 13.
[3] Since the trial court did not place Johnson on probation or suspend his sentence, nor express an intent to do so, the portion of the sentence imposed without probation or suspension of sentence is now moot.