LOLLEY, J.
_JjThe defendant, Allen Jamel Robinson, appeals the judgment of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, in which he was found guilty of aggravated second degree battery, a violation of La. R.S. 14:34.7, and second degree kidnapping, a violation of La. R.S. 14:44.1, for crimes committed against his girlfriend, Ester Freeman. He was subsequently adjudicated a second-felony offender and received the maximum sentences on each charge: 30 years for aggravated second degree battery and 80 years for second degree kidnapping. The sentences were ordered to run consecutively, for a total of 110 years’ imprisonment without benefits. Robinson now appeals, and for the reasons stated herein, his convictions and sentences are affirmed.
Facts
Robinson lived with his girlfriend, Ester Freeman, and the two had a five-month-old daughter at the time of the offenses. Ester is mildly to moderately developmentally delayed. Robinson worked on cell towers and had been employed by the same company for approximately 12 years. He was gone from home several weeks, if not months, at a time working, and Ester would remain at the home with their daughter while he was away. On Friday, October 1, 2010, Robinson returned home from working out of town, earlier than expected by Ester. He arrived at the couple’s apartment sometime between 4:00-5:00 p.m. and began his brutal attack against Ester.
Tonia Hamilton, a previous girlfriend and mother of two of Robinson’s children, telephoned Robinson because he was supposed to watch the children, but he had failed to show up. According to Tonia’s ^testimony at trial, Robinson advised Tonia that he could not help with the children because “there was blood everywhere” in the apartment. Robinson told Tonia that he and Ester had been fighting. Tonia threatened to call the police until Robinson allowed Tonia to speak to Ester to make sure she was all right. Fearing something was amiss, Tonia went to the couple’s apartment. She testified at trial that the baby was on the couch, and she found Ester hiding behind the bathroom door— horribly burned and bleeding from her ear, face and head. The two women convinced Robinson to allow Ester to get treatment at the emergency room by assuring him that they would say that someone else had inflicted the injuries on Ester. Tonia drove Ester to the hospital with Robinson also in the vehicle.
At the hospital, Ester’s condition was brought to the attention of Corporal Henry Foy of the Monroe Police Department. He asked Ester who had inflicted her injuries, which he described at trial as “the most horrific burns I’ve seen since I was involved in the Gulf War.” Ester informed Cpl. Foy that Robinson had beaten and burned her. As Cpl. Foy approached Robinson in the waiting area, Robinson attempted to leave, but Cpl. Foy detained him, Mirandized him, and arrested him. *1004 Since the address where the incident occurred was outside the city limits, Cpl. Foy called the Ouachita Parish Sheriffs Office (“OPSO”). Deputies Timothy Klick and Paul Zuber with the OPSO responded and took custody of Robinson. Deputy Klick again read Robinson his Miranda rights.
Robinson was initially charged by indictment with the attempted second degree murder of Ester Freeman. The charge was later amended to | aggravated second degree battery, a violation of La. R.S. 14:34.7, and second degree kidnapping, a violation of La. R.S. 14:44.1. After a jury trial, Robinson was unanimously found guilty as charged. He was ultimately sentenced as a second-felony offender and given consecutive sentences amounting to a total of 110 years in prison. This appeal ensued.
DISCUSSION
Sufficiency of the Evidence — Second Degree Kidnapping
In his first assignment of error, while he admits burning Ester for “disrespecting” him, Robinson challenges the sufficiency of the evidence of the second degree kidnapping conviction. Specifically, he argues that the state failed to prove that he secreted or forcibly held Ester against her will. He suggests that Ester was free to leave and could have left when he went to the store for medical supplies. Additionally, in his pro se appeal brief, Robinson suggests that he “really thought” Ester would call the police or leave while he was gone to obtain medical supplies. He states that he was nervous to return to the apartment for fear that she had called for help.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), 21 So.3d 297. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, — U.S. —, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial *1005 evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the direct evidence is thus viewed, the facts | .^established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299. This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.02/13/08), 975 So.2d 753. Credibility evaluations are within the province of the jury as trier of fact. Id. The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Eason, supra.
|fiThe crime of second degree kidnapping is found in La. R.S. 14:44.1, which provides in pertinent part:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
* * *
(3) Physically injured or sexually abused;
⅜ * *
B. For purposes of this Section, kidnapping is:
* * *
(3) The imprisoning or forcible secreting of any person.
Here, the evidence is more than sufficient to support the conviction of second degree kidnapping. Ester testified that Robinson held her at the apartment for a period in excess of 12 hours — from late Friday afternoon until sometime Saturday when Tonia arrived to check on her. During this time, he admittedly beat her and burned her over 70 percent of her body. Ester told the emergency room personnel, Cpl. Foy, and Dep. Zuber that Robinson made her stay in the apartment by threatening to take or harm her infant child. Notably, Ester testified that she did not have a cell phone when the incident occurred, nor did she have a car. In addition, Robinson made Ester hide behind the bathroom door so that she would not be seen when Tonia knocked at the door. Moreover, Ester was not in any condition to independently seek help; she was severely beaten and burned and terrified that Robinson would make good on his threats if she tried to leave.
The jury reasonably credited the testimony of Ester and the medical providers who treated her. There was ample evidence to support the jury’s treasonable conclusion that Robinson forcibly secreted *1006 Ester, and held her against her will while she was severely physically injured. Ester’s testimony alone is sufficient to support the conviction of second degree kidnapping, despite Robinson’s argument to the contrary. Considering the totality of the circumstances, the fact that Robinson left Ester alone for a short time does not suggest Ester could have actually gotten away. Thus, this assignment is without merit.

Excessive Sentences

In his second assignment of error, Robinson challenges as excessive the imposition of the maximum sentences on each conviction. He further claims that consecutive sentences equate to a life sentence, which, according to Robinson, is not warranted under the circumstances. Robinson again provides a pro se argument on this issue. He contrasts burning Ester with an iron to what he considers more serious batteries involving “stab wounds open flesh above waist with gun shot wounds.” Robinson argues that the maximum sentences should be reserved for the latter batteries and are excessive as imposed in this case.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 94-0461 (La.09/05/95), 660 So.2d 819; State v. Linnear, 44,830 (La.App.2d Cir.12/09/09), 26 So.3d 303. When the record shows an adequate factual basis for the sentence imposed, |sremand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Linnear, supra. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.08/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.05/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 2003-0518 (La.12/03/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/02/11), 78 So.3d 799.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. The sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App.2d Cir. 12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but |3whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.01/25/12), 86 So.3d 29.
Louisiana R.S. 15:529.1, which governs sentencing upon a second felony conviction, provides in pertinent part:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, *1007 then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Second degree kidnapping is punishable by imprisonment at hard labor for not less than five nor more than 40 years. La. R.S. 14:44.1(C). Aggravated second degree battery is punishable by not more than 15 years, with or without hard labor. La. R.S. 14:34.7(0.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be seiVed consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988). It is within the court’s discretion to make sentences consecutive rather than concurrent. State v. Johnson, 42,323 (La.App.2d Cir.08/15/07), 962 So.2d 1126. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra. Among the factors to be 110considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant poses an unusual risk of danger to the public, the potential for the defendant’s rehabilitation, and whether the defendant has received a benefit from a plea bargain. State v. Johnson, supra; State v. Barnett, 46,303 (La.App.2d Cir.05/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.04/13/12), 85 So.3d 1239.
In the case sub judice, the trial court ordered a presentence investigation and provided a thorough and exhaustive review of his reasons for sentencing, including reference to the factors of La. C. Cr. P. art. 894.1. The court concluded that both crimes were crimes of violence, noting the gravity and viciousness of the offenses. Robinson’s personal history was reviewed, as well as his lengthy history of domestic abuse against former girlfriends. The severe impact of these crimes on the victim deeply impressed the trial court, which noted that Ester will relive this trauma every day for the rest of her life. The trial judge stated:
The Court is cognizant of the principle that maximum sentences are appropriate in cases involving the most serious violations of a statute and the worst type of offender. Truly, this is the most serious such violation and the worst offender of this type the Court has ever seen. In fact, the physicians who treated this victim for her injuries called it the most horrific they had ever seen. Some of these healthcare workers were moved to tears and had to call in assistance from supervisors for help.
A review of the record overwhelmingly supports the imposition of the maximum allowable sentences to be served consecutively. Notably, we agree that Robinson’s sentence is extreme; however, the nature of his crimes Inis particularly gruesome, warranting an extreme sentence. The crime against Ester, a mentally disabled individual and mother of Robinson’s infant child, was extremely vicious and heinous. Further, not only did Robinson terrorize Estes, but the effect of his crime was so horrendous that even seasoned emergency room personnel were traumatized. Independently, this crime was particularly *1008 gruesome, but we also acknowledge Robinson’s history of abuse and propensity to re-offend if not incarcerated. We agree that Robinson poses an extreme danger to public safety, and these consecutive sentences running for 110 years without benefits certainly does not shock the sense of justice. The trial court was well within its discretion in ordering maximum sentences to run consecutively. Accordingly, we conclude that this assignment of error is without merit.
Conclusion
For the foregoing reasons, the convictions and sentences of Allen Jamel Robinson are affirmed.
AFFIRMED.