WILLIAMS, J.
 

 | JJhe defendant, Lloyd Wayne Nelson, was charged by bill of information with simple burglary, a violation of LSA-R.S. 14:62, and theft of used building components, a violation of LSA-R.S. 14:67.23. Following a trial by jury, he was convicted as charged. The trial court sentenced the defendant to serve eight years in prison at hard labor for each conviction, with the sentences to be served consecutively. The trial court also ordered the defendant to serve 30 days in prison for each conviction, in lieu of the payment of court costs, with credit for time served. For the reasons set forth herein, we affirm the defendant’s convictions. However, we amend the defendant’s sentences, vacating the portion of the sentences which imposed 30 days in prison in lieu of the payment of court costs. The sentences are affirmed as amended.
 

 FACTS
 

 On July 26, 2007, at approximately 6:00 a.m., Joe Wiggins observed the defendant walking down Morningside Drive in Shreveport, Louisiana, carrying a brown paper bag. Another witness, Gene Nelms, testified that he saw a man walk up the driveway of a vacant house and around to the back of the house. A short time later, Nelms heard the sound of breaking glass and called the Shreveport Police Department (“SPD”).
 

 SPD Captain Ken Jackson responded to the call and arrived on the scene at approximately 6:47 a.m. Capt. Jackson spoke to Nelms, who related what he had witnessed. By that time, SPD Corporal Richard McDonald had arrived on the scene. Cpl. McDonald entered the vacant home and heard what he described as the “steady rattling” of the house’s 12plumbing pipes. Soon afterwards, Capt. Jackson found the defendant walking around the house. Capt. Jackson noticed that the defendant and his clothing were “very dirty” and that the dirt on the defendant appeared to be the same as the dirt found underneath the vacant house. Cut pieces of plumbing copper were found on the ground near where the defendant was located. Capt. Jackson detained the defendant.
 

 The defendant was subsequently arrested and charged by bill of information with simple burglary, a violation of LSA-R.S. 14:62, and theft of used building components, a violation of LSA-R.S. 14:67.23. Following a jury trial, he was convicted as charged.
 
 [1]
 
 The defendant filed motions for new trial, arrest of judgment and post-verdict judgment of acquittal. The trial
 
 *909
 
 court denied the motions. The defendant was sentenced to serve eight years in prison at hard labor for each conviction. The sentences were ordered to be served consecutively.
 
 [2]
 
 The trial court also ordered the defendant to serve 30 days in prison for each conviction, in lieu of the payment of court costs, with credit for time served. The trial court denied the defendant’s motion to reconsider sentences. The defendant appeals.
 

 DISCUSSION
 

 Sufficiency of the Evidence
 

 The defendant contends the evidence was insufficient to prove that he |swas guilty of the crimes charged beyond a reasonable doubt. Much of the defendant’s argument with regard to the sufficiency of the evidence concerns the state’s proof of his identity as the offender. Specifically, he argues that Nelms, the witness who called the police, excluded him as the person he saw going to the rear of the vacant house prior to hearing the glass break. The defendant also argues that no one saw him enter the house and that he would not have had sufficient time to cause the damage to the house in the amount of time described by the witnesses. The defendant further argues that the lone fingerprint found inside of the house was not of sufficient quality to permit an analysis to prove that he was the perpetrator.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The
 
 Jackson
 
 standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its |4own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.2/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 unit denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude
 
 *910
 
 beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.1/14/09), 2 So.3d 582;
 
 State v. Parker,
 
 42,311 (La.App. 2d Cir.8/15/07), 963 So.2d 497.
 

 In cases involving a defendant’s claim that he was not the person who committed the crime, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof.
 
 State v. Hughes,
 
 2005-0992 (La.11/29/06), 943 So.2d 1047;
 
 State v. Powell,
 
 27,959 (La.App. 2d Cir.4/12/96), 677 So.2d 1008,
 
 writ denied,
 
 96-1807 (La.2/21/97), 688 So.2d 520. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,981 (La.App. 2d Cir.5/9/07), 956 So.2d 769. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant.
 
 State v. Robinson,
 
 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207;
 
 State v. Ponsell,
 
 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678,
 
 writ denied,
 
 2000-2726 (La.10/12/01), 799 So.2d 490.
 

 In the instant case, Joe Wiggins testified that he was on the front porch of his house when he saw the defendant walking down Morningside Drive toward Hearne Avenue. Wiggins testified that the defendant had a brown paper bag in his hand. Wiggins unequivocally identified the defendant as the man he saw that morning, stating that he had seen the defendant in the neighborhood on other occasions.
 

 Capt. Jackson testified that, on the morning of the incident, Wiggins told him that the defendant had walked by earlier that morning carrying a brown paper bag that contained a pair of pliers with red handles. Although Wiggins was unable to recall telling the officer that the bag contained pliers, he was able to identify the bag found inside the vacant house as the bag the defendant had been carrying. The shears that were recovered at the scene had red handles.
 

 1 fiGene Nelms testified that he saw a man walk up the driveway of the vacant house and go around to the back of the house. Nelms also knew the defendant from having seen him in the neighborhood; however, Nelms testified that the man he observed walking around the vacant house was not the defendant.
 

 Capt. Jackson and Cpl. McDonald testified with regard to their investigation on the morning of the defendant’s arrest. They stated that when they responded to the call, they found the defendant outside of the vacant house. Capt. Jackson and Cpl. McDonald examined the scene outside of the house and discovered that a pane of glass in the rear door of the house had been broken and that the door had been opened. The officers went inside of the house, where they found a brown paper bag, some copper plumbing items and a pair of black rubber gloves. Various items around the house had been destroyed or displaced: metal fixtures were out of place, the hot water tank had been turned over and metal items had been pulled out of the wall. Underneath the house, the officers found a pair of shears with red handles lying adjacent to some cut pieces of copper plumbing pipe. One of the officers encountered the defendant walking around the house and noticed that the grass beneath the house had been pushed down as if someone had been lying there. The defendant and his clothing were covered in dirt. The officers did not find
 
 *911
 
 anyone other than the defendant near or inside of the vacant house. Photographs of the storage shed behind the house depict a yellow bag; the bag was filled with cut pieces of copper.
 

 The defendant testified at the trial and denied removing the copper |7and other metal from the house. He testified that as he was walking down the street, he saw some copper on the side of the vacant house. The defendant stated that he decided to stop and walk around to the back of the house to urinate. After doing so, he looked underneath the house for copper. He testified that as he was looking under the house, he saw the feet of someone approaching, so he “got scared” and crawled underneath the house. The defendant further stated that the copper was already missing from underneath the house when he arrived. The defendant admitted that he had considered taking and selling the copper he saw around the house, but he denied entering the house and cutting or taking any copper. The defendant initially testified that he was in the backyard of the house for approximately 15 minutes. However, after he was confronted with the testimony of the other witnesses, he stated that “maybe” he was behind the house for as long as 45 minutes. He also testified that he never heard the sound of breaking glass that Nelms had reported. The defendant also admitted that he had previous convictions of simple burglary, theft and illegal possession of stolen things.
 

 Viewing the evidence in a light most favorable to the prosecution, we find that the evidence was sufficient to prove, beyond a reasonable doubt, the defendant’s identify as the person who committed these offenses. The defendant was seen walking down the street carrying a brown paper bag shortly before one of the neighbors reported hearing the sound of breaking glass. The defendant was apprehended at the scene, and he admitted that he had searched for copper underneath the vacant house. Although the [ ^defendant denied cutting or taking any copper from the house, a pair of shears and some cut pieces of copper were found underneath the house near the site where the defendant had been lying. No one else was seen in the area when the defendant was apprehended. There was no evidence to indicate that another person had cut the copper and left it at the house. Therefore, the evidence presented supports the jury’s conclusion that the defendant was the perpetrator of the offenses charged.
 

 We also find that the evidence was sufficient to establish the essential elements of both offenses beyond a reasonable doubt. Simple burglary is “the unauthorized entering of any dwelling ... or other structure, movable or immovable, ... with the intent to commit a felony or any theft therein.” LSA-R.S. 14:62(A). Further, LSA-R.S. 14:67.23 provides, in pertinent part:
 

 A. Theft of a used building component is the misappropriation or the taking of a used building component from immovable property belonging to another, either without the consent of the owner of the immovable property, or by means of fraudulent conduct, practices, or representations. An intent to deprive the owner of the immovable property permanently of the used building component is essential.
 

 B. “Used building component” shall mean any object produced or shaped by human workmanship or tools that is an element of [a] structural ... component ...., that is immovable property or fixture, including but not limited to ... lights, chandeliers, ... faucets, faucet handles ... air conditioners, water heaters ... plumbing ..., or component
 
 *912
 
 parts of immovable property of any nature or kind whatsoever.
 

 C. (1) Whoever commits the crime of theft of a used building component, when the theft or taking amounts to a value or replacement value, whichever is greater, of five hundred dollars or more shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
 

 |9In the instant case, the police officers who investigated the scene testified that various copper items had been removed and taken from the house; plumbing pipes had been removed from the attic and the copper had been removed from the air conditioning compressor outside the house. Joel Roberts, the owner of the vacant house, testified that he did not give the defendant permission to enter or take anything from his house. Roberts described the extensive damage to the home caused by the theft of the copper and other metals. Roberts stated that replacing the water pipes underneath the house and the hot water heater cost more than $500, but less than $2,000. He also estimated that it would cost between $5,000 and $6,000 to replace the missing components from the air conditioning compressor and the related equipment.
 

 After hearing the testimony, the jury concluded that the defendant entered the vacant house, without the owner’s permission, and took the copper and other metal from the vacant house. Based on our review of the record, we find that it was reasonable for the jury to conclude that the evidence presented at trial proved, beyond a reasonable doubt, that the defendant had committed the burglary and the theft of used building components.
 

 These assignments of error lack merit.
 

 Motion in Limine
 

 The defendant also contends the trial court erred in denying his motion
 
 in limine
 
 to exclude evidence from a national internet database of scrap metal transactions, which is accessible only to law enforcement [ inofficials. The internet database, known as Leadsonline.com, showed that the defendant was a frequent seller of scrap metals in the year prior to the date of these offenses. Prior to trial, the state provided the defendant with notice of its intent to introduce evidence that the defendant was a frequent seller of scrap copper. The defendant filed a motion
 
 in limine,
 
 objecting to that evidence. Following a hearing, the trial court overruled the motion
 
 in limine
 
 and allowed the introduction of the evidence.
 

 In accordance with that ruling, the state presented the testimony of SPD Detective S.D. Willis, who testified with regard to LeadsOnline.com. Detective Willis explained that when scrap yards purchase scrap metal from sellers, the yards are required to collect information about the seller and enter the information into the internet database. Detective Willis testified that he searched the internet database for the defendant’s name and Louisiana identification number and discovered that the defendant had engaged in 90 transactions within the past year and had sold approximately 900 pounds of copper and brass to local scrap yards.
 

 Hearsay is an oral or written assertion, other than made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801(A)(1) and (C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802;
 
 State v. Zeigler,
 
 40,673 (La.App. 2d Cir.1/25/06), 920 So.2d 949,
 
 writ denied,
 
 2006-1263
 
 *913
 
 (La.2/1/08), 976 So.2d 708;
 
 State v. Wade,
 
 39,797 (La.App. 2d Cir.8/9/05), 908 So.2d 1220. Hearsay is excluded because the value of the statement | nrests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability.
 
 State v. Zeigler, supra; State v. Wade, supra.
 

 LSA-C.E. art. 803 provides, in part:
 

 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 

 [[Image here]]
 

 (6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term “business” as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.
 

 In
 
 State v. Juniors,
 
 2003-2425 (La.6/29/05), 915 So.2d 291,
 
 cert. denied,
 
 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006), the Supreme Court explained the “business records” exception to our hearsay rule. The Court stated:
 

 The witness laying the foundation for the admissibility of |12business records need not have been the preparer of the records; however, the witness must be familiar with and able to testify from personal knowledge about the bookkeeping and accounting procedures of the entity whose business records are sought to be introduced. Under Art[icle] 803(6), it is essential that a custodian or other qualified witness tes-timonially explain the record-keeping procedures of the business and thus lay the foundation for the admissibility of the records. If the foundation witness cannot vouch that the requirements of the Code of Evidence have been met, the evidence must be excluded.
 

 Id.
 
 at 327, citing
 
 Cole Oil & Tire Co., Inc. v. Davis,
 
 567 So.2d 122, 129 (La.App. 2 Cir.1990).
 

 LSA-R.S. 51:573 pertains to the record-keeping requirements of scrap metal dealers and processors. The statute requires the dealers and processors of scrap metal to,
 
 inter alia,
 
 keep records of purchases and sellers and to maintain those records either in a register, book or in electronic form at their place of business for a period of two years. The dealers are also required to make the records “available for inspection by any peace officer or law enforcement official at any time during the two year period.” At any time during the two-year period, the sheriff of the parish in which the dealer is located, may request a
 
 *914
 
 written copy of the completed form or report. In the event of such a request, one copy of the report must be filed with the parish sheriff and one copy must be filed with or mailed to the Department of Public Safety and Corrections.
 

 In the instant case, although LSA-R.S. 51:573 authorized the SPD to request and review the records of scrap dealers and processors, there is no statutory requirement that the dealers forward them records to LeadsOnline.com. According to the evidence presented at trial, this | ^company, LeadsOnline.com, is a commercial internet database provider and is not operated by either local law enforcement or the Department of Public Safety and Corrections. There is no guarantee of reliability in the transfer of information from a dealer to the commercial database provider. Although the scrap metal dealer’s records may have been kept in the regular course of business in accordance with the law, there was no showing in the form of “testimony of the custodian or other qualified witness” that the records in question were the accurate, regularly kept records of the dealer(s) in question. Even if LeadsOnline.com could be considered an acceptable source for the information, there was no testimony from a qualified representative of the company to show that the records introduced in this case were those transmitted to the web site by the dealers in question. The records were not those of a scrap dealer or related business; rather, they were reports by a third party of what purported to be submitted business records. Accordingly, we find that the records from LeadsOn-line.com, and the police officer’s testimony with regard to those records, were hearsay evidence, and, therefore, inadmissible pursuant to LSA-C.E. art. 803, in the absence of testimony from the custodian of the records or other qualified witness. Thus, the trial court erred in admitting the evidence obtained from LeadsOnline.com.
 

 However, the erroneous admission of hearsay evidence does not require a reversal of the defendant’s conviction if the error is harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to |14the verdict.
 
 Satterwhite v. Texas,
 
 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988);
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967);
 
 State v. Wille,
 
 559 So.2d 1321 (La.1990);
 
 State v. Zeigler, supra.
 

 As the reviewing court, we conclude that there is no reasonable possibility that Detective Willis’ erroneously admitted testimony contributed to the defendant’s verdict. The state’s case against the defendant was strong, even in the absence of the evidence obtained from LeadsOn-line.com. The defendant was seen in the area of the crime nearly an hour before police arrived and was found, covered in dirt, at the vacant house from which the copper had been cut. Additionally, there is no indication that the defendant’s decision to testify was induced by the wrongful use of the evidence obtained from the web site. Clearly, the strength of the state’s case, in particular the defendant’s apprehension at the scene of the crime, was the motivating factor in the defendant’s decision to testify and attempt to explain his presence at the scene. See,
 
 Harrison v. United States,
 
 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).
 
 [3]
 
 This assignment lacks merit.
 

 
 *915
 

 Motion in Arrest of Judgment/Double Jeopardy
 

 | isThe defendant also contends the trial court erred in denying his motion in arrest of judgment. He argues that his motion should have been granted because his convictions for both simple burglary and theft of used building components violated his right against double jeopardy.
 

 The Fifth Amendment to the United States Constitution contains the double jeopardy clause, which provides that no person shall be “subject for the same offenses to be twice put into jeopardy of life or limb.”
 
 State v. Price,
 
 89,582 (La.App. 2d Cir.3/23/05), 899 So.2d 633;
 
 State v. Jacobs,
 
 493 So.2d 766 (La.App. 2d Cir. 1986). The double jeopardy clause was made applicable to the states through the Fourteenth Amendment, and Article 1, Section 15 of the 1974 Louisiana Constitution contains a similar guarantee.
 
 Id.
 
 The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense.
 
 State v. Crandell,
 
 2005-1060 (La.3/10/06), 924 So.2d 122;
 
 State v. Jefferson,
 
 40,439 (La.App. 2d Cir.1/27/06), 920 So.2d 984.
 

 In the instant case, the defendant apparently argues that he has been subjected to multiple punishments for the same course of conduct. Therefore, our analysis begins with a determination of whether a single offense or multiple offenses were involved.
 
 See, State v. Price, supra.
 

 To determine whether two offenses are the same for purposes of double jeopardy analysis, Louisiana employs both the
 
 “Blockburger
 
 test” lifiand the “same evidence test.”
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980);
 
 State v. Price, supra.
 
 The
 
 “Blockburger
 
 test,” established by the United States Supreme Court in
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), states that two offenses are not the same for purposes of double jeopardy if “each crime requires proof of an additional fact which the other does not.”
 
 State v. Barakat,
 
 38,419 (La.App. 2d Cir.6/23/04), 877 So.2d 223;
 
 State v. Blackson,
 
 38,044 (La.App. 2d Cir.1/28/04), 865 So.2d 272.
 

 The “same evidence test” is a much broader test for purposes of double jeopardy:
 

 If the evidence required to support a finding of guilt of one crime would also have supported the conviction of another, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
 

 ⅜ *
 

 The “same evidence test” is somewhat broader in concept than
 
 Blockburger,
 
 the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
 

 
 *916
 

 State v. Price,
 
 899 So.2d at 635, quoting
 
 State v. Knowles, supra
 
 (internal citations omitted).
 

 A conviction for simple burglary requires proof of the following elements: (1) the defendant entered a dwelling or structure, (2) with the intent to commit a felony or theft, and (3) without authorization. LSA-R.S. 14:62(A),
 
 supra.
 
 A conviction for theft of a used building component requires proof: (1) that the defendant misappropriated or took (2) a used | i7building component (3) from immovable property belonging to another (4) without consent or by fraudulent conduct (5) with the intent to deprive the owner permanently of the used building component. LSA-R.S. 14:67.23(A),
 
 supra.
 

 Applying the
 
 Blockburger
 
 test to these two offenses, it is clear that they are separate offenses. The offense of theft of a used building component requires additional proof that the defendant took or misappropriated a used building component from immovable property belonging to another. The offense of simple burglary requires the additional elements that the defendant entered a dwelling or structure with the intent to commit a theft or felony. Because each of these offenses requires proof of an additional element not required of the other, the offenses of simple burglary and theft of a used building component are two separate offenses under the
 
 Blockburger
 
 test.
 

 Also, these are two separate offenses under the “same evidence test” because the evidence necessary to prove the offense of simple burglary would not have been sufficient to convict the defendant of theft of a used building component. The state was required to present the additional evidence that the defendant took or misappropriated a used building component in order to convict him of theft of a used building component. Likewise, the evidence necessary to prove the offense of simple burglary would not have been sufficient to support a conviction for theft of a used building component, as the state was required to prove that the defendant entered a dwelling or structure with the intent to commit a theft or felony 118therein. Thus, the plain language of LSA-R.S. 14:62 proscribes behavior above and beyond that of theft of a used building component as defined by LSA-R.S. 14:67.23. Accordingly, because these are two separate offenses, there was no double jeopardy violation in convicting the defendant of simple burglary and theft of a used building component. This assignment lacks merit.
 

 Excessive Sentences
 

 The defendant also contends the sentences imposed were constitutionally excessive. He also argues that the trial court failed to comply with the provisions of LSA-C.Cr.P. art. 894.1. Specifically, he argues that the trial court did not articulate for the record that it considered the defendant’s employment history, family ties or health.
 

 In the instant case, the defendant filed a motion to reconsider sentences on the grounds that the sentences were “excessive and in violation of the defendant’s rights.” No mention was made of the trial court’s alleged failure to comply with the provisions of LSA-C.Cr.P. art. 894.1. In sum, the defendant merely argued that the sentences were constitutionally excessive.
 

 The failure to include a specific ground upon which a motion to reconsider may be based shall preclude the defendant from raising an objection to the sentence or from urging on appeal or review any ground not raised in the motion. LSA-C.Cr.P. art. 881.1;
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Speed,
 
 43,786 (La.App. 2d Cir.1/14/09), 2 So.3d 582;
 
 *917
 

 State v. Masters,
 
 37,967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121. Therefore, the defendant is precluded from arguing noncompliance with 119LSA-C.Cr.P. art. 894.1 and is relegated to a review of the bare claim of constitutional excessiveness.
 

 A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.1/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
 

 Whoever commits the crime of simple burglary shall be fined not more than $2,000, imprisoned with or without hard labor for not more than 12 years, or both. LSA-R.S. 14:62. As stated above, the defendant herein was sentenced to serve eight years in prison at hard labor.
 

 Based on our review of the entire record of these proceedings, we are convinced that the sentence imposed for the conviction for burglary was not excessive. The defendant was exposed to a sentence of up to 12 years at hard labor, a fine of up to $2,000, or both. The defendant’s sentence of eight years in prison was within the statutory range for the offense for which he was convicted. We find that the sentence was neither disproportionate to the offense of conviction, nor shocking to the sense of justice. Thus, the |2nsentence imposed is not constitutionally excessive.
 

 Regarding the sentence for the conviction of theft of a used building component, the defendant argues that the amount of the theft was never proven at trial; therefore, it was impossible for the trial court to determine the correct penalty to impose. LSA-R.S. 14:67.23 provides, in pertinent part:
 

 (C)(1) Whoever commits the crime of theft of a used building component, when the theft or taking amounts to a value or replacement value, whichever is greater of five hundred dollars or more shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
 

 (2) When the theft or taking amounts to a value or replacement value, whichever is greater of three hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
 

 (3)(a) When the theft or taking amounts to a value or replacement value, whichever is greater, of less than three hundred dollars, the offender shall be imprisoned, for not more than six months, or may be fined not more than five hundred dollars, or both.
 

 (b) In a case provided for in Subpara-graph (a) of this Paragraph, if the offender has been convicted two or more times previously of a theft or taking, which each previous occasion, amounted to a value or replacement value whichever is greater, of less than three hundred dollars, he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
 

 D. When there has been a theft or taking by a number of distinct acts of
 
 *918
 
 the offender, the aggregate of the amount of the theft or taking shall determine the grade of the offense.
 

 As noted above, the homeowner in the instant case testified that the |2iCost of replacing the missing copper and metal components from the ah' conditioning compressor and the related equipment was between $5,000 and $6,000. He also testified that he replaced the copper pipes that had been removed from underneath the house with plastic pipes, and it cost him more than $500, but less than $2,000, to do so. The defendant produced no evidence or testimony to dispute the homeowner’s testimony with regard to the replacement value of the stolen pipes and related equipment.
 

 Based upon our review of the record, we find that the evidence was sufficient to prove that the theft of the used building components amounted to “value or replacement value” of $500 dollars or more. Therefore, pursuant to LSA-R.S. 14:67.23(C)(1), the sentence for the theft was a maximum sentence of 10 years in prison with or without hard labor, a fine of up to $8,000, or both. The sentence imposed, eight years at hard labor, was within the sentencing range for the offense. We find that this sentence was neither disproportionate to the severity of the offense nor shocking to the sense of justice. This argument lacks merit.
 

 Consecutive Sentences
 

 Next, the defendant contends the sentences were excessive because the trial court ordered the sentences to run consecutively. The defendant argues that the court ordered consecutive sentences without setting forth any reasons for doing so.
 

 When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or 122¾11 be served consecutively. LSA-C.Cr.P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory.
 
 State v. Derry,
 
 516 So.2d 1284 (La.App. 2d Cir.1987),
 
 writ denied,
 
 521 So.2d 1168 (La.1988). It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
 
 State v. Johnson,
 
 42,323 (La.App. 2d Cir.8/15/07), 962 So.2d 1126.
 

 A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms.
 
 State v. Johnson, supra; State v. Mitchell,
 
 37,916 (La.App. 2d Cir.3/3/04), 869 So.2d 276,
 
 writ denied,
 
 2004-0797 (La.9/24/04), 882 So.2d 1168,
 
 cert. denied,
 
 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005). Among the factors to be considered are the defendant’s criminal history,
 
 State v. Ortego,
 
 382 So.2d 921 (La.1980),
 
 cert. denied,
 
 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980);
 
 State v. Jacobs,
 
 493 So.2d 766 (La.App. 2d Cir.1986); the gravity or dangerousness of the offense,
 
 State v. Adams,
 
 493 So.2d 835 (La.App. 2d Cir.1986),
 
 writ denied,
 
 496 So.2d 355 (La.1986); the viciousness of the crimes,
 
 State v. Clark,
 
 499 So.2d 332 (La.App. 4th Cir.1986); the harm done to the victims,
 
 State v. Lewis,
 
 430 So.2d 1286 (La.App. 1st Cir.1983),
 
 writ denied,
 
 435 So.2d 433 (La.1983); whether the defendant constitutes an unusual risk of danger to the public,
 
 State v. Jett,
 
 419 So.2d 844 (La.1982); the potential for defendant’s rehabilitation,
 
 State v. Sherer,
 
 437 So.2d 276 (La.1983);
 
 State v. Lighten,
 
 516 So.2d 1266 (La.App. 2d Cir.1987); and whether defendant has received a benefit from a plea
 
 *919
 
 bargain,
 
 State v. Jett, supra; State v. Adams, supra.
 
 The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. See
 
 State v. Harris,
 
 42,376 (La.App. 2d Cir.9/26/07), 966 So.2d 773,
 
 writ denied,
 
 2007-2109 (La.3/28/08), 978 So.2d 304.
 

 In the instant case, the trial court did not articulate reasons for imposing consecutive sentences and no presentence investigation was ordered. However, we find that the record supports the aggregate 16-year sentence.
 

 During his trial testimony, the defendant admitted that he had been previously convicted of simple burglary, theft and illegal possession of stolen things. The record contains a copy of the defendant’s “rap sheet,” which indicates an extensive criminal history, with numerous arrests. During the sentencing hearing, the court stated:
 

 Mr. Nelson, I have taken into consideration your extensive criminal history, including a number of felony convictions that you have which includes a prior burglary. For that reason, the Court will sentence you on the simple burglary charge conviction to eight years’ hard labor, to run consecutively with any other sentence you are required to serve. Credit is given for time served.
 

 On the theft of building components, the Court will sentence you to eight years’ hard labor, to run consecutive with any other sentence. Credit is given for time served.
 

 In addition on the [sic] each count, the Court will sentence you to serve thirty days in lieu of costs, | ^concurrently, with credit for time served.
 

 Moreover, after the sentences were imposed, the prosecutor stated for the record that the state would waive “any right to file a multiple offender bill because of the consecutive sentences.”
 

 Considering the defendant’s criminal history and the poor potential for the defendant’s rehabilitation, we find that the sentences imposed are not excessive. Additionally, the defendant received a substantial benefit from the state’s decision not to file a multiple offender bill. This assignment is therefore without merit.
 

 ERRORS PATENT
 

 In accordance with LSA-C.Cr.P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record herein reveals one error patent. The record reflects that the trial court sentenced the defendant “to serve thirty days in lieu of costs, concurrently, with credit for time served.”
 

 An indigent defendant may not be subjected to imprisonment because he is unable to pay a fine which is a part of his sentence.
 
 Bearden v. Georgia,
 
 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983);
 
 State v. Monson,
 
 576 So.2d 517 (La.1991);
 
 State v. Kerrigan,
 
 27,846 (La.App. 2d Cir.4/3/96), 671 So.2d 1242. A defendant’s indigent status in such a situation may be discerned from the record. See,
 
 State v. Williams,
 
 484 So.2d 662 (La.1986);
 
 State v. Kerrigan, supra.
 
 This court has consid ered it error for a trial court to impose jail time for failure to pay court costs. See,
 
 State v. Howard,
 
 44,434 (La.App. 2d Cir.6/24/09), 15 So.3d 344;
 
 State v. Kerrigan, supra.
 
 In the context of disposition of this issue, this court has elected to amend the defendant’s sentence. See,
 
 State v. Howard, supra; State v. Tillman,
 
 43,569 (La.App. 2d Cir.10/22/08), 997 So.2d 144.
 

 The record herein shows that the defendant was and is indigent, pursuant to
 
 *920
 
 LSA-R.S. 15:175(A)(l)(b).
 
 [4]
 
 The defendant was represented by court-appointed counsel at trial and on appeal. Therefore, we hereby amend the defendant’s sentences to vacate the portions which impose an additional 30 days in jail, in lieu of the payment of court costs. The sentences are affirmed as amended.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the defendant’s convictions. We hereby amend the defendant’s sentences to vacate the portions of the sentences imposing jail time in default of the payment of court costs. As amended, the defendant’s sentences are affirmed.
 

 CONVICTIONS AFFIRMED; SENTENCES AMENDED; AFFIRMED AS AMENDED.
 

 [1]
 

 . Following his convictions, the defendant filed a motion for the appointment of a sanity commission, which the trial court granted. Two physicians examined the defendant and both considered him competent to consult with his attorney and capable of understanding the proceedings. After a hearing, the court found the defendant competent to proceed.
 

 [2]
 

 . The state waived the filing of a habitual offender bill because of the consecutive sentences imposed.
 

 [3]
 

 . In
 
 Harrison, supra,
 
 die defendant was charged with felony murder. The prosecution introduced into evidence three confessions allegedly made by the defendant. Thereafter, the defendant decided to testify with regard to his version of the events that
 
 *915
 
 led to the victim's death. The defendant appealed, and the appellate court reversed the defendant's conviction, finding that the confessions were inadmissible. On remand, the prosecution read the transcript of the defendant's testimony from the prior trial to the jury. The defendant was again convicted, and the appellate court affirmed the conviction. The United States Supreme Court granted certiorari and reversed the defendant's conviction, holding that the prosecution failed to show that the defendant's prior testimony was not induced by the prosecution's wrongful use of the illegally obtained confessions.
 

 [4]
 

 . LSA-R.S. 15:175(A)(1)(b) provides that "[a] person will be deemed 'indigent' who is unable, without substantial financial hardship to himself or to his dependents, to obtain competent, qualified legal representation on his own.”