Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,925-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                Appellee

versus

JERMAINE BOLDEN                                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 357,153

Honorable Ramona L. Emanuel, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES E. STEWART, SR.                        Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
SAMUEL S. CRICHTON
Assistant District Attorneys

* * * * *

Before STEPHENS, ROBINSON, and HUNTER, JJ.

**ROBINSON, J.**

The defendant, Jermaine Bolden ("Bolden"), was convicted of armed robbery and aggravated battery after a jury trial on February 24, 2020. Bolden entered into an agreement whereby the State dismissed its habitual offender bill in exchange for concurrent sentences of 40 years at hard labor without benefit of probation, parole, or suspension of sentence on the armed robbery count, and ten years at hard labor on the aggravated battery count, and was sentenced accordingly on June 14, 2021. Bolden also agreed to the revocation of probation and parole in a separate matter and for that sentence to also be served concurrently. Bolden appealed his convictions on August 17, 2021. Although the appeal was more than 30 days after sentencing, given that the appeal was filed relatively close in time to sentencing and the fact that the State did not object to the late filing, this Court allows the appeal in the interest of judicial efficiency.

For the reasons set forth below, we AFFIRM the convictions.

## FACTS AND PROCEDURAL HISTORY

On April 8, 2018, Corporal Ted Ray Jamison ("Cpl. Jamison") of the Shreveport Police Department ("SPD") responded to a crime scene located at 5609 Kent Avenue in Shreveport, the residence of Kenneth Bankhead ("Bankhead") and made contact with Alfrado Houston ("Houston"), who reported that he was shot and robbed by Bolden, who was also known as "Sockhead". Houston told Cpl. Jamison at the scene that he knew Bolden, that Bolden demanded that Houston give him what he had, and that Bolden had a black handgun with an extended clip, which he fired. Audio excerpts from the Mobile Vehicle Surveillance ("MVS") system in Cpl. Jamison's

vehicle containing a recording of Houston's statement to Cpl. Jamison, as well as a recorded reference to "Sockhead," were admitted at trial.

Trooper Cody Roy ("Trooper Roy") of the Louisiana State Police was an armed robbery investigator in SPD's violent crimes unit at the time of the offense. Upon dispatch to the Kent Avenue scene, Trooper Roy spoke to Bankhead, who recounted the events. According to Bankhead as relayed in his initial statement, he had invited Bolden and Houston to his house. Two other unknown males were also present. Bankhead sat on the couch with Houston while Bolden paced back and forth until he pulled out a semi-automatic handgun with an extended clip, pointed it at Houston, and told him to "Give it up." He tried to get Bolden to put the gun down, but he refused. Afraid that Bolden might use the gun on him, he went to the kitchen and then heard a gunshot. Trooper Roy got Bankhead's permission to enter his residence where he saw blood on the couch and floor where Houston sat and saw the spent shell casing, which was consistent with Bankhead's statement.

SPD Corporal John Madjerick ("Cpl. Madjerick") processed the Kent Avenue crime scene. His testimony and photographs introduced into evidence established that blood droplets were located on the carpet in front of the living room couch. Cpl. Madjerick noticed a defect or tear in the fabric of the couch by an area of blood on the cushion, and found a bullet or projectile on the floor under the couch. Cpl. Madjerick had to cut away the carpet and a piece of the subfloor to collect the projectile. He also located in front of the couch an expended Federal brand ".45 auto" cartridge casing, which ejects when firing a semi-automatic handgun. Both the projectile and

2

casing were transferred to the North Louisiana Crime Lab along with a .45 caliber handgun recovered at the time of Bolden's arrest.

Trooper Roy spoke with Houston while he was in the hospital and presented him with a photographic lineup. Houston identified Bolden as the person who shot and robbed him. A warrant for Bolden's arrest was issued based on the information obtained from Houston and Bankhead.

On April 9, 2018, officers went to a residence located at 3637 Lillian Street in Shreveport to arrest Bolden. Two females were on the porch of the residence, and Bolden was located hiding in a closet in a back bedroom. A chair was pushed against the outside of the closet door. Bolden refused to come out, and a Taser was deployed during the arrest. David Soderberg ("Soderberg"), an officer with the Alexandria Police Department and part of the U.S. Marshal's violent offender task force, assisted in taking Bolden into custody. When Soderberg cleared the scene, he located a semi-automatic Glock pistol with an extended clip shoved between the cushions of the chair.

Hannah Clark ("Clark"), who was with SPD's crime scene unit, processed the Lillian Street scene. After photographing the firearm, Clark cleared it and removed one live round from the chamber. An additional smaller magazine was also located. A bag of 60 live rounds of .45 caliber Federal brass ammunition was found in a backpack, which was consistent with both magazines. Over $2,000 was located inside a trash can. Clark collected the evidence and swabbed the grip of the firearm, but no DNA evidence was presented at trial.

Richard Beighley ("Beighley"), an expert in firearms identification and comparison, conducted testing to compare the projectile and cartridge casing found at the scene of the shooting to reference bullets test-fired from

3

the Glock. Due to the Glock's polygonal rifling characteristics, Beighley could not make a positive determination that the *projectile* was fired from the Glock. He could say only that both the recovered projectile and the reference bullets he fired had the same class characteristics. However, due to the distinctive markings left on the *casing* when the Glock was fired, Beighley positively determined and testified that the .45 caliber cartridge casing recovered by the couch at Bankhead's residence was fired by the .45 caliber Glock found at the Lillian Street scene.

The testimonies at trial of Bankhead and Houston were slightly inconsistent with the accounts they each provided at the time of the incident. In his testimony, Bankhead stated that he had recently gotten off drugs after three stints at rehabilitation and psychiatric treatment, and stated that he did not recall what he said to the officers at the scene. He testified that both Bolden and Houston were at his home at 5609 Kent Avenue on April 8, 2018. He said that others were "probably" present, but he denied that there were two other unknown black males with Bolden or telling the police about them. Contradictory to his statement to Trooper Roy, Bankhead testified that he did not witness any altercation between Bolden and Houston, he did not see Bolden with a gun, and he did not see Bolden point a gun at Houston. He recalled only that he heard a loud gunshot after he left the living room, and that he ran outside to the front of the house to talk to Houston's wife and that Houston came out of the house with an injury to his hand. Bankhead also recalled giving an investigator permission to enter his house.

When called as one of the State's witnesses, Houston claimed to have nothing to say and stated that he wanted a lawyer and to "plead the Fifth."

4

The State filed a motion to compel his testimony, and a lawyer was appointed to consult with Houston. After consulting with the lawyer, Houston agreed to testify, and the trial court granted the motion to compel, which included an order that his testimony could not be used in any criminal case other than in connection with his failure to comply.

Houston ultimately testified as to the following details of the incident. On April 8, 2018, his friend, Bankhead, called and asked him to stop by. Houston had just returned home from work and was going with his wife to get supplies for his mother's house remodel. He had about $3,800 in cash from his income tax refund. Houston arrived at Bankhead's residence and went inside while his wife remained in their van. He went in the living room and sat beside Bankhead on the couch. Others were present, but he did not know them. Bolden walked out of the kitchen and began pacing the living room. Bolden then produced a pistol from his pocket, pointed it at him, and told him to "drop everything." Houston, who was still sitting, refused to comply. Bolden was standing over him and they argued until Bolden fired the gun into his left hand. At that point, Houston gave him the cash. Bolden then walked back to the kitchen area, and Houston went out the front door to tell his wife that he had been shot. When he saw Bolden walking toward the van, he yelled for his wife to call the police. Bolden then ran towards the back yard. The primary inconsistencies with Houston's initial statement were that Houston testified that he did not know Bolden, he denied knowing him by the nickname of "Sockhead," and he denied saying otherwise to the investigating officer. However, Houston recalled making a photo identification of Bolden, and he identified Bolden in court as the person who shot him.

**DISCUSSION**

Bolden argues that the State failed to meet its burden of proof beyond a reasonable doubt and that the evidence at trial was insufficient to support a conviction of armed robbery or aggravated battery.

The standard by which appellate courts are to review the sufficiency of evidence in criminal prosecutions was set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), as follows:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In conducting a *Jackson* review, the reviewing court may not "substitute its own appreciation of the evidence for that of the factfinder," assess the credibility of witnesses, or reweigh the evidence. *Id*; *State v. Nelson*, 44,762 (La. App. 2 Cir. 10/28/09), 25 So. 3d 905, citing *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517, and *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A jury's decision to accept or reject the testimony of a witness in whole or in part is entitled to great deference. *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685. The fact-finder weighs the respective credibility of the witnesses, and appellate courts will generally not second-guess those determinations. *State v. Dabney*, 02-0934 (La. 4/9/03), 842 So. 2d 326; *State ex rel. Graffagnino v. King*, 436 So. 2d 559 (La. 1983).

This standard applies in cases involving both direct and circumstantial evidence. *State v. Prude*, 53,193 (La. App. 2 Cir. 3/4/20), 293 So. 3d 183; *State v. Henry*, 47,323 (La. App. 2 Cir. 7/25/12), 103 So. 3d 424, *writ denied*, 12-1917 (La. 3/8/13), 109 So. 3d 356; *State v. Hill*, 47,568 (La. App.

6

2 Cir. 9/26/12), 106 So. 3d 617. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Taylor*, 28,736 (La. App. 2 Cir. 10/30/96), 682 So. 2d 827. Regarding circumstantial evidence, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Young*, 20-1041 (La. 5/13/21), 320 So. 3d 356. The circumstantial evidence rule is neither separate from nor stricter than the *Jackson* standard of review. *Taylor, supra.*

Bolden argues that the State failed to prove beyond a reasonable doubt that he committed the subject offenses, pointing out several issues and testimony discrepancies. He points out that there were two other people at the Kent Avenue address at the time of the incident who could have been involved. Also, the gun found in the chair at the Lillian Street address where Bolden was apprehended could have been put there by anyone, especially since the chair could not have been put against the outside of the closet door by someone inside the closet. Further, there is no evidence that the cash discovered was part of what was taken from Houston. Bolden urges that, most importantly, the testimonies of Bankhead and Houston were both unreliable since both differed from each of their statements made at the time of the incident.

The State asserts that while there may have been minor inconsistencies in the testimonies of Houston and Bankhead, they were consistent with the statements made at the scene regarding what generally

transpired, as well as consistent with each other. Further, despite Houston's reluctance to testify at trial, he did ultimately testify that Bolden pulled a gun on him, demanded that he give him what he had, shot him in the hand, and then took the cash from Houston's wallet. In addition, there was physical evidence of the shooting at Bankhead's residence, including compelling expert testimony that the expended casing found where Houston was shot matched the .45-caliber Glock pistol found in the chair that was pushed against the closet where Bolden was hiding when he was arrested.

There was witness testimony as to Bolden's commission of the crimes. Much of the initial statements made by the witnesses to officers were recorded and those officers testified as to the details of the statements, including references to the recording excerpts. Further, Houston positively identified Bolden in a lineup shortly after the incident and in the courtroom during trial. Any inconsistencies in the witnesses' statements were inconsequential. This Court finds no reason to second-guess the jury's credibility determinations.

There was not only the significant circumstantial evidence in the form of witness statements and testimony, but there was direct physical evidence in the form of an exact match of the casing found at the crime scene to the pistol found in such close proximity to where Bolden was apprehended at the Lillian Street address, his grandmother's home. The fact that the chair in which the pistol was found could not have been propped against the closet door by Bolden himself since he was hiding inside, is also an inconsequential factor in the determination of whether there existed a reasonable hypothesis of innocence.

This Court finds that there was ample evidence to prove beyond a reasonable doubt each of the essential elements of the offenses of armed robbery and aggravated battery, as well as Bolden's identification as the perpetrator, and that every reasonable hypothesis of innocence to find Bolden guilty as charged was excluded, especially when viewed in the light most favorable to the prosecution.

## CONCLUSION

For the foregoing reasons, this Court AFFIRMS Bolden's conviction of armed robbery and aggravated battery, for which he was sentenced to 40 years at hard labor without benefit of probation, parole, or suspension of sentence on the armed robbery count, and ten years at hard labor on the aggravated battery count, to be served concurrently with each other as well as for a previous sentence in which Bolden self-revoked probation and parole.

**AFFIRMED.**