MOORE, J.
hA jury convicted the defendant, Shami-chael' Toro Tillman, on two counts of attempted manslaughter (La. R.S. 14:31 and 14:27), one count of attempted second degree murder (La. R.S. 14:30.1 and 14:27), and one count of resisting an officer with force or violence (La. R.S. 14:108.2). The court sentenced Tillman to 20 years’ imprisonment at hard labor for each conviction of attempted manslaughter, 40 years’ imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for the conviction of attempted second degree murder, and three years’ imprisonment at hard labor for the conviction of resisting an officer with force or violence. The sentences were ordered to be served consecutively. Tillman now appeals. For the following reasons, we affirm the defendant’s convictions and sentences.

FACTS

The shooting arose out of a fight that took place outside the home at 2526 Malcolm Street, Shreveport, Louisiana on July 9, 2009. According to testimony at trial, the fight began after words were exchanged between an unidentified male who came from two houses down the street and a group of people standing outside the address above, including Vernesta Baker, three of her sons, Cortavian, Deandre, and Jacory, and their friend Demarcus Bradford. After the exchange, the unidentified male went back to the house and subsequently returned with three other males that included the defendant Shamichael Tillman (“Tillman”), his brother Vontrez Tillman and Sandy Mosely. Tillman and Cortavian Baker exchanged words and Tillman allegedly pushed Cortavian in the face, although this is disputed by the | .¡defense. As these two began fighting, a battle royal broke out among the other 3 or 4 young men on each side. Vernesta Baker then called 911 and told the defendant and his group to leave. The fight abruptly broke up, and Tillman and the others retreated to the street toward their house two doors down. There is conflicting testimony whether he went into his house or simply withdrew down the street toward his house for a few minutes.
Minutes later, Tillman returned with a gun. People began shouting and soon scattered — some into the Baker’s home and some into the backyard. Vernesta Baker was still on the phone with the 911 operator and did not realize initially that Tillman had returned armed with a pistol. As she ran for the house, Tillman ran up from behind and struck her in the back of the head with his gun. While Vernesta Baker collapsed to the ground, dazed, the defendant aimed his gun at Latandrea Ruffins, Jacory Baker’s girlfriend, but the gun jammed or misfired, and she ran into the house with some of the others. Evidence collected at the crime scene included both expended and unfired cartridges.
Tillman advanced into the carport area and fired at the house, leaving bullet holes in the side of the house off the carport. Cortavian Baker testified he was in the carport with his brother when he saw Tillman strike his mother. He was just inches from the carport door when Tillman shot him in the upper left chest area, with the bullet exiting through his back. Tillman then attempted to enter the house, but was blocked by Vernesta Baker’s boyfriend, Timothy Bell, who was trying to shut the door. Tillman stuck his arm, while holding the gun, inside the door, as he tried to get inside. Bell grabbed his |sarm and the two struggled. Tillman shot Bell in the side, the bullet passing through his right lung and liver. Bell fell to the *485 floor. Tillman attempted to shoot Bell again while standing over him, but according to Bell, the gun misfired, but he heard the hammer click.
Some of the others had fled to the back of the house, and Tillman pursued them. Whether Tillman shot Cortavian before or after he shot Vernesta Baker was not clear from the testimony. Vernesta testified that she saw Tillman chase someone around the house, and when he came around he pointed the gun at her and fired. The bullet hit her in the ankle, shattering her ankle bone. Because Vernesta Baker was still on the phone with the 911 operator when Tillman began shooting, sounds of the gunshot and Vernesta Baker screaming were preserved in the 911 recording that was played for the jury. From the testimony and the tape of Vernesta Baker’s 911 call, the trial court later concluded that Vernesta Baker may have been shot first, Cortavian Baker shot second, and Timothy Bell shot last.
Tillman and others were observed leaving the scene in a gray Pontiac automobile. Shreveport Police Officer Dan Sawyer was patrolling the area and heard the notice about the shooting and the suspects. Sawyer found Tillman and three others, including his brother, Brandon Tillman, in the gray Pontiac. Sawyer told the group they were being detained in connection with an investigation of the shooting. When the officer had the four men place their hands upon the hood of the police car, Brandon Tillman began yelling, threw his hands into the air, and backed away. The officer used force to return Brandon Tillman to the vehicle, at which time the defendant 1 intervened and grabbed the officer, pulling him back. Brandon Tillman swung at the officer and the officer responded by punching him. The defendant grabbed the officer again as the officer and Brandon Tillman wrestled. Both brothers began beating the officer in the head. The officer tried to release his police dog, but the release mechanism failed. The defendant and the others fled before the officer managed to free the dog. Tillman was later apprehended in Texas.
Tillman was charged by bill of information filed on November 2, 2009, with one count each of attempted first degree murder upon Vernesta Baker, Cortavian Baker, and Timothy Bell, and one count of resisting an officer with force or violence. Trial by jury commenced September 12, 2011. Verdicts were rendered on September 15, 2011, finding Tillman guilty of attempted manslaughter of Vernesta Baker, guilty of attempted second degree murder of Cortavian Baker, guilty of attempted manslaughter of Timothy Bell, and guilty as charged of resisting a police officer with force or violence.
At trial Vernesta Baker, Cortavian Baker, Timothy Bell, and Latandrea Ruffins all testified that they saw the defendant with a gun. Vernesta Baker, Cortavian Baker, and Jacory Baker all testified that the unidentified person started the fight by saying that the Bakers and their friends wanted to fight, and that he left and returned with the defendant. All three testified that the defendant pushed or punched Cortavian in the face and that a physical fight ensued and then suddenly stopped, and the defendant left. Cortavi-an Baker saw Tillman hit his mother in the back of the head with the gun. He saw Tillman shooting at the house, and then saw Tillman shoot him in the left | ¿chest area before attempting to enter the house. He saw Tim Bell struggling to close the door and he saw Tillman shoot Bell in the side. Vernesta Baker testified that she saw Tillman shoot her in the leg. Bell initially said he did not know if Tillman intended to kill him, but he believed that Tillman meant to kill him. He also stated *486 that he heard the sound of gunfire from a .22 caliber gun.
The defendant’s brother, Vontrez Tillman, disputed this version of the event. He testified that on July 9, 2009, he was at home with a friend, “Ced,” who said he was going home to take a shower. Ced returned minutes later claiming that some guys down the street had threatened to jump him. Vontrez called his brother, the defendant, who drove over to the house and walked down the street to confront the boys at 2526 Malcolm. Vontrez told police the defendant had a 9 mm handgun when he got out of the car. He also told police that Cortavian hit the defendant first and that Vernesta Baker also struck the defendant with something. Vontrez said that his brother was merely defending him and his friend, and that Tillman only fired his gun in response to gunfire from another person named Chris Boone, whom Vontrez maintains was there that night. Cortavian testified that Chris was there, but did not have a gun. Jacory testified that Chris arrived during the fistfight.
The defendant did not testify. In closing arguments, defense counsel did not dispute that Tillman shot all three victims, but argued that Tillman’s intention was to protect, not kill. The defense argued that his lack of intent to kill was evident by the fact that none of the three victims were killed, even though shot at “point-blank” range. The defense argued that just as Tillman | fiwas trying to protect his brother Vontrez Tillman at the Baker house, he was only trying to protect his brother Brandon Tillman when he attacked Officer Sawyer. The jury was instructed on the applicable statutes and responsive verdicts for each count, without objection.
On September 15, 2011, the jury, by a unanimous vote, returned a responsive verdict of guilty of attempted manslaughter for both Count One (Vernesta Baker) and Count Three (Tim Bell). On Count Two (Cortavian Baker), the jury voted 11-1 to return the responsive verdict of guilty of attempted second degree murder. By vote of 11-1, Tillman was found guilty as charged on Count Four, resisting an officer by force or violence.

Sentencing

On September 20, 2011, Tillman filed a motion for presentence investigation report (“PSI”), a motion for new trial, and a motion for post-judgment verdict of acquittal.[1] All three motions were denied, and Tillman waived the sentencing delay. The trial court advised the defense that the PSI was unnecessary because Tillman’s arrest records were included in the record, which the judge had already reviewed and because the judge had heard the witnesses’ sworn testimony. The defendant was advised that he was free to present any other information, including testimony from others or his own testimony, for the court’s consideration. Defense counsel stated that [ 7he had spoken with the defendant and they had agreed to decline to call any witnesses and present any information for sentencing. The trial court made the following findings:
• The nature of the crime was “vicious and incredibly outrageous.”
• The defendant had no sense or concern for the public’s safety.
*487 • Three people were shot by the defendant and hospitalized.
• The defendant posed an unusually high risk to the public.
• The defendant does not have potential for rehabilitation.
• Tillman’s gunshots were both random and purposeful, showing his specific intent to kill or inflict great bodily harm when he shot three people and shot at the many others who ran inside the home.
• Tillman lacked justification for his actions because this was not Tillman’s fight and he had no strong provocation to warrant firing a gun at people.
• Tillman was not protecting anyone— he attacked vulnerable, unarmed people who he knew could not resist and that this was deliberate and cruel.
• He created severe, permanent, life-threatening injury to his three victims and caused significant economic loss.
• The sole mitigating factor was Tillman’s youth, as he was 25 years old at the time of his crimes.
• Tillman would likely commit another crime during probation or suspension of sentence, so both were rejected.
• Tillman needed corrective treatment and any lesser sentence would deprecate the seriousness of his offenses.
• Tillman was previously tried and acquitted of two counts of first degree murder dropped to second degree murder, but failed to take that opportunity to rehabilitate himself.
|sThe court concluded that the severity of the crimes warranted consecutive maximum sentences. Tillman was sentenced to serve 20 years’ imprisonment at hard labor for each conviction of attempted manslaughter; to serve 40 years’ imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, for the conviction of attempted second degree murder; and to three years’ imprisonment at hard labor for the conviction of resisting an officer with force or violence. These sentences were ordered to be served consecutively.
Tillman’s motion to reconsider sentence was filed on October 19, 2011, alleging that his four sentences were constitutionally excessive. He argued that the trial court’s denial of his motion for a PSI resulted in the court not considering any mitigating circumstances that might have been reported, such as personal history and family ties. Furthermore, he asserts that the trial court failed to consider his potential for rehabilitation as he had no prior felony record, and failed to consider the fact that he did not benefit from any plea bargain. Because the jury found him guilty of attempted manslaughter on two counts, Tillman argued that consecutive sentences were disproportionate to the seriousness of his offenses and unwarranted given that three of the offenses occurred within moments of one another and were part of the same transaction or occurrence. Tillman also alleged that the trial court improperly considered a prior not guilty verdict rendered in his previous trial, in which the same judge presided. The motion was denied on October 25, 2011, for reasons given at sentencing.
19Tillman timely moved for appeal on October 19, 2011, and the appeal was granted on October 25, 2011.

DISCUSSION

By his first assignment of error, the defendant contends that the evidence adduced at trial was insufficient to support the convictions for attempted second degree murder and resisting an officer by force or violence.
*488 Tillman argues here as he did at trial that there was no evidence of specific intent to kill any of the victims and maintains that if he had wanted to kill the victims, while firing from such close range, he could have killed them. He also points to inconsistent testimony from the members of the Baker family, Vernesta, Corta-vian and Jacory, and Timothy Bell. Finally, since he shot Cortavian after shooting Vernesta, the evidence was insufficient for conviction of second degree murder because Tillman’s blood had not cooled when the offense occurred.
The state argues that the evidence was sufficient to sustain the convictions: all three victims identified Tillman as the shooter. The jury observed and heard the witnesses’ testimony and assessed the credibility of each witness for the state and the defense. It obviously found the testimony of the Bakers and Officer Sawyer to be credible and found that Tillman had the specific intent to kill Cortavian Baker and that he resisted arrest by force and violence, both without justification.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), evidence is sufficient when a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, finds the essential 110elements of the crime were proven beyond a reasonable doubt.
Review of sufficiency of the evidence does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2 Cir. 1984). The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App. 2 Cir. 2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.

Attempted Second Degree Murder

A specific intent to kill is an essential element of the crime of attempted second degree murder, and also of the responsive crime of attempted manslaughter. State v. Hutcherson, 34,540 (La.App. 2 Cir. 4/4/01), 785 So.2d 140. A conviction for an attempted offense must rest upon sufficient proof that the offender actively desired to cause the prescribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. Id.
 Specific intent is a state of mind and need not be proved as a fact; it may *489 be inferred from the circumstances of the transaction and the actions of the defendant. Id. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. In reviewing the correctness of such a determination, an appellate court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Defendant argued to the jury and to this court that the evidence does not support a finding that he had specific intent to kill Cortavian Baker and the other victims. The gist of his argument that there is no evidence of specific intent is the fact that none of the victims suffered mortal wounds even though the shots were fired at close range.
| ^Viewing the evidence in the light most favorable to the prosecution, this court finds that the state adequately proved that the defendant possessed the specific intent to kill. As noted above, specific intent may be inferred from the circumstances and actions of the defendant. Tillman was initially involved in the fight with Cortavi-an. Testimony indicates that he left the scene to either obtain a gun being held by one of his associates or he went to his mother’s house to obtain a gun, and then returned to the victim’s house to pursue his adversaries. After he brutally hit Vernesta Baker in the back of her head with the pistol, he attempted to shoot La-tandrea Ruffins who was trying to get into the house. Tillman then advanced to the side of the house to the carport where he shot Cortavian in the left side of his chest. He then tried to enter the house, struggled and shot Timothy Bell in the side of his chest causing serious injury to him and attempted to shoot him again while standing over him. Although both Bell and Cortavian survived their injuries, the location of these injuries in the chest area implies that Tillman had an intent to kill his victims. The fact that Cortavian survived the shooting does not negate specific intent to kill. The simple act of pointing a gun at Cortavian Baker and firing the gun at him shows specific intent to kill. Considering these facts, we believe that any rational trier of fact could conclude that Tillman had specific intent to kill Cortavi-an.
Tillman also argues that the evidence indicates that he probably shot Cortavian after he shot Vernesta Baker, but prior to shooting Timothy Bell. Since the jury convicted him of attempted manslaughter for the crimes against Vernesta Baker and Timothy Bell, which he presumes was based on “sudden passion” or “heat of blood,” his blood could not have sufficiently | ^cooled during between these shootings, or even if Cortavian was shot last, since the entire event took place in a few minutes. Thus, he contends the conviction for attempted second degree murder must be overturned.
“Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). The appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigating factors had not been established by a preponderance of the evidence. State v. Robinson, 32,794 (La.App. 2 Cir. 3/1/00), 754 So.2d 311, writ denied, 2000-0989 (La.3/23/01), 787 So.2d 1008: State v. Lew *490 is, 28,973 (La.App. 2 Cir. 12/11/96), 685 So.2d 1130, writ denied, 97-0122 (La.5/16/97), 693 So.2d 797.
After review, we conclude that a rational jury could conclude that Tillman did not establish by a preponderance of the evidence that he was acting out of sudden passion or heat of blood. We also note that heat of blood is not an essential element of manslaughter, so the jury did not have to make a determination regarding heat of blood in finding attempted manslaughter on the other two counts. As previously stated, several people testified that the defendant left the fight and then returned with a gun and began pursing his victims. Surely this gave him time for reflection. Furthermore, the evidence was sufficient that the jury could have found Tillman guilty as charged of attempted first degree murder on all three counts. The defense made no objection to the jury instruction that a |¶ ¿responsive verdict of attempted second degree murder or manslaughter could be rendered as a compromise verdict, as allowed by statute. We do not know why the jury returned responsive verdicts of attempted manslaughter for the crimes against Vernesta Baker and Timothy Bell, where the evidence supported the charged offenses of attempted first degree murder.
Finally, the defendant points to the conflicting testimony presented by the state’s witnesses. Most of the inconsistent testimony involves Vernesta Baker regarding her location and the location of the victims when shot, whether the defendant went into his house to retrieve a gun, or whether he had it with him all along or obtained it from one of his associates, and whether Tillman started the fight by pushing Cor-tavian in the face.
As noted above, conflicting testimony is not a matter of sufficient evidence, but rather credibility, which is the purview of the jury as fact finder. It is also clear from the transcript that complete chaos erupted when Tillman returned with the gun and began firing. Although there are minor inconsistencies regarding where Vernesta was when the fight started and Tillman struck her, whether Tillman shot Cortarán before or after Bell or Vernesta and other insignificant matters, the testimony was consistent that Tillman retrieved a gun and shot the victims exhibiting a specific intent to kill. The jury clearly found the testimony of the state’s witnesses more credible than that of Von-trez Tillman.

Resisting an Officer by Force or Violence

The offense of resisting a police officer with force or violence includes the use of threatening force or violence by one sought to be detained before the arresting officer can restrain him and after notice is given that he is under |lsarrest or detention, when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty. La. R.S. 14:108.2.
Tillman also claims that he was justified in grabbing Officer Sawyer and holding him so that his brother Brandon could punch him in the face, and then in punching Officer Sawyer in the head himself. The defendant claims that his actions were justified in defense of his brother Brandon, as they were being detained. But there is no evidence that Brandon was under threat of a forcible offense, and no evidence that the force and violence used was reasonable or apparently necessary. Officer Sawyer was in a marked police car, wearing his police uniform, and told the four men that they were being detained. Neither the defendant nor Brandon Till *491 man refute that they were clearly given notice that they were being detained and that both had reasonable grounds to believe that the victim was a police officer acting in the performance of his official duty. When Brandon Tillman refused to cooperate with the detainment, the officer complied with his duty by forcibly trying to detain him. There was no evidence to indicate that Brandon Tillman was justified in attacking the officer such that he could have claimed self-defense, and so the defendant is also not justified in claiming defense of others. The evidence and testimony do not show that either Brandon Tillman or the defendant was under threat of death or great bodily harm or under threat of a forcible offense. There was no threat, and therefore no justification of the defendant’s use of force and violence against Officer Sawyer.
| ^Considering the evidence in a light most favorable to the prosecution, a rational trier of fact could have reasonably found that the essential elements of both attempted second degree murder and resisting arrest by use of force of violence were proven beyond a reasonable doubt, and that the defendant lacked justification for his actions. Therefore, this argument is without merit.

Excessive Sentence

By his second assignment, the defendant contends that the cumulative 83 years is excessive under the facts and circumstances of this case.
The defendant argues that his sentences, totaling 83 years, were excessive because three of the four sentences were the maximum allowed and because the four sentences were ordered to be served consecutively. Without the PSI, which the trial court refused to order, Tillman argues that the trial court lacked sufficient information to properly consider all the factors under La. C. Cr. P. art. 894.1 and therefore considered his youth as the only mitigating factor. He argues that he is not the worst offender and that these were not the worst offenses; therefore the imposition of maximum sentences for the two counts of attempted manslaughter and for resisting an officer by force or violence is not warranted under the circumstances in which he was simply trying to protect his brothers Vontrez and Brandon. He claims that he simply fired the shots after Chris Boone fired his gun and he justifiably attacked Officer Sawyer because he believed his brother was in danger when the officer attempted to detain them. Tillman further argues that the trial court improperly held against him a prior arrest and four-year incarceration on two counts of second degree murder, even though he was later acquitted following a jury trial. He states that the trial court’s admonition that he had 117learned nothing from the experience shows that the trial court clearly held the arrests against him even though he was acquitted on both charges. He also claims that the order that these sentences be served consecutively was not warranted under the circumstances where all of the offenses were part of the same transaction or occurrence.
The state counters that the defendant had the opportunity and chose not present any witnesses or other information regarding his personal history and family information for consideration. The state argues that the trial court provided an adequate factual basis for imposing the maximum sentences and ordering the sentences to be served consecutively, and thus presents no abuse of the trial court’s discretion.
A sentence is reviewed by examining whether the trial court abused its discretion in sentencing and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App. 2 Cir. *492 11/2/11), 77 So.3d 1052. The trial court has wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La. App. 2 Cir. 1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App. 2 Cir. 9/21/11), 73 So.3d 473. The reviewing court does not determine whether another sentence would have been more appropriate, only whether the trial court abused its discretion. State v. Esque, 46,515 (La.App. 2 Cir. 9/21/11), 73 So.3d 1021.
A review of the sentencing guidelines in La. C. Cr. P. art. 894.1 does not require a listing of every aggravating or mitigating circumstance; the trial court must only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App. 2 Cir. 11/2/11), 77 So.3d 477. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Landos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App. 2 Cir. 8/13/08), 989 So.2d 267. The defendant’s personal history and criminal record, as well as the seriousness of the offense are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App. 2 Cir. 9/21/11), 73 So.3d 503; State v. Caldwell, 46,645 (La.App. 2 Cir. 9/21/11), 74 So.3d 248. All convictions and all prior criminal activity may be considered, as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App. 2 Cir. 12/3/08), 998 So.2d 864, unit denied, 2009-0265 (La.11/6/09), 21 So.3d 305. A defendant’s lack of remorse is a proper sentencing consideration. State v. Birch, 43,119 (La.App. 2 Cir. 3/19/08), 979 So.2d 643; State v. Robinson, 33,921 (La.App. 2 Cir. 11/01/00), 770 So.2d 868; State v. Shipp, 30,562 (La.App. 2 Cir. 4/8/98), 712 So.2d 230, 237, writ denied, 98-1199 (La.9/25/98), 724 So.2d 775.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict needless pain and suffering. State v. Fatherlee, 46,686 (La. App. 2 Cir. 11/2/11), 77 So.3d 1047. Maximum | ^sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App. 2 Cir. 4/4/07), 954 So.2d 804.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Derry, 516 So.2d 1284 (La.App. 2 Cir.1987), writ denied, 521 So.2d 1168 (La. 1988). It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. Johnson, 42,323 (La.App. 2 Cir. 8/15/07), 962 So.2d 1126.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecu *493 tive terms. State v. Johnson, supra; State v. Boudreaux, 41,660 (La.App. 2 Cir. 12/18/06), 945 So.2d 898; State v. Mitchell, 37,916 (La.App. 2 Cir. 3/03/04), 869 So.2d 276, writ denied, 04-0797 (La.9/24/04), 882 So.2d 1168, cert. denied, 543 U.S. 1068, 125 S.Ct. 905, 160 L.Ed.2d 801 (2005).
Among the factors to be considered are the defendant’s criminal history, State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Jacobs, 493 So.2d 766 (La.App. 2 Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2 Cir. 1986), writ denied, 496 So.2d 355 (La.1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App.20 4 Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1 Cir. 1983), unit denied, 435 So.2d 433 (La. 1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); and the potential for defendant’s rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La.App. 2 Cir.1987).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. Pamilton, 43,112 (La.App. 2 Cir. 3/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.2/13/09), 999 So.2d 1145, State v. Boyte, 42,763 (La.App. 2 Cir. 12/19/07), 973 So.2d 900, writ denied, 2008-0175 (La.6/20/08), 983 So.2d 1272. The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Doyle, 43,438 (La.App. 2 Cir. 8/13/08), 989 So.2d 864.
The sentencing range for a person convicted of attempted second degree murder is imprisonment for 10-50 years at hard labor, without benefit of probation, parole, or suspension of sentence. La. R.S. 14:30.1 and La. R.S. 14:27.
The sentencing range for a person convicted of attempted manslaughter is imprisonment for a maximum of 20 years at hard labor. La. R.S. 14:31 and La. R.S. 14:27.
12IThe sentencing range for a person convicted of resisting a police officer with force or violence is a maximum fine of $2,000 or 1-3 years’ imprisonment, with dr without hard labor, or both. La. R.S. 14:108.2. Tillman claims that his four sentences were constitutionally excessive, where the maximum sentence allowed was imposed for three of the four offenses and where the trial court ordered the four sentences to be served consecutively, giving him a total of 83 years in prison. He claims that the trial court’s denial of his motion for a PSI resulted in a lack of information for the proper consideration of the sentencing guidelines and factors in La. C. Cr. P. art. 894.1. However, the trial court explained that the defendant’s arrest records were already in the record, which the trial court had reviewed. Furthermore, the trial court gave the defendant the opportunity to present any information and to present witnesses on his behalf. The defendant declined to present the trial court with any further information for consideration. The trial court considered mitigating circumstances, and found only one: Tillman’s youth.
Because the sentence imposed in this case is severe, we would have preferred that a PSI be included in the record for *494 review. This does not mean, however, that the sentence imposed was excessive in this case. It is clear that the sentencing judge was familiar with this defendant’s background, and the court gave a thorough articulation of the reasons for the sentence imposed on each conviction, including the imposition of maximum sentences to be served consecutively. As noted, the trial court is allowed to consider prior acts, as well as whether or not the defendant has shown any remorse, and whether he shows any potential for rehabilitation. The trial |gacourt found the evidence was sufficient to find Tillman guilty as charged of three counts of attempted first degree murder. The trial court concluded that Tillman’s actions towards the three shooting victims, the bystanders and inhabitants of the home he shot up, and the police officer that he attacked, were of the worst kind and that he was one of the worst offenders. In this case, the sole threat was caused by the defendant, who attacked unarmed people as they tried to seek shelter in their own home and attacked a uniformed police officer in the performance of his duties, without any justification. The trial court noted that Tillman caused serious, permanent injury to his victims, as well as significant economic loss to the victims and the community.
We conclude that the sentences imposed were within the guidelines and were not grossly disproportionate to the crimes committed and are not a needless infliction of pain and suffering. Tillman terrorized a family and its friends, shot at and injured unarmed people, and battered a police officer acting in the line of duty. These sentences do not shock the sense of justice. There is no showing that the trial court abused its discretion in imposing maximum sentences and ordering the sentences to be served consecutively. Therefore, this argument is without merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.

. The trial judge said he believed that the evidence showed that Tillman had specific intent to kill in all three shootings, and that the evidence supported a verdict of guilty as charged on all three counts of attempted first degree murder. The trial judge further found that the evidence supported the responsive verdicts of attempted second degree murder and attempted manslaughter, as well as resisting an officer with the use of force or violence. The trial judge did not find that the defendant was justified in bringing and using a gun under the circumstances.